612 So.2d 225 (1992)
Joe and Valerie JURE, et al.
v.
Dr. J. John RAVIOTTA, et al.
No. 91-CA-1969.
Court of Appeal of Louisiana, Fourth Circuit.
December 29, 1992.
Writ Denied March 26, 1993.
*226 Bryan C. Misshore, Luis A. Leitzelar, Lemle & Kelleher, New Orleans, for appellee.
Richard H. Barker, IV, Harry J. Boyer, Jr., Barker & Boyer, New Orleans, for appellant.
Before KLEES, LOBRANO and JONES, JJ.
LOBRANO, Judge.
This appeal arises from a judgment in favor of defendant-appellee, the Louisiana Patient's Compensation Fund (LPCF) and against plaintiff-appellant, Valerie Jure, dismissing Jure's claim for medical malpractice against the LPCF.
FACTS AND PROCEDURAL HISTORY:
On May 23, 1986, Joe and Valerie Jure filed suit, individually and on behalf of their minor child, Erica Jure, against Dr. Joseph John Raviotta, a specialist in obstetrics and gynecology, Jo Ellen Smith Hospital and their respective liability insurers.
In their petition, plaintiffs alleged that Dr. Raviotta engaged in a sexual relationship with Valerie Jure while she was his patient and that he improperly dispensed narcotic drugs and other medications to her.
In May, 1990, following one day of trial, a settlement was reached between plaintiffs and Dr. Raviotta's malpractice insurer in the amount of $98,000.00. Pursuant to the provisions of Louisiana Revised Statute 40:1299.44(C), which provides for court approval of the settlement and for the LPCF to be added as a defendant, the LPCF filed an answer, and objection to the approval of the proposed settlement and an exception of no cause of action. The LPCF asserted that plaintiffs had no cause of action for sexual misconduct against the LPCF pursuant to the specific provisions of Louisiana Revised Statute 40:1299.41, et seq., the Louisiana Medical Malpractice Act.
On September 21, 1990, a hearing was held on the LPCF's exception of no cause of action. The trial court maintained the exception as to sexual misconduct and allowed plaintiffs to proceed with a trial on *227 the merits as to the other allegations in their petition.
On February 11, 1991, the LPCF filed a motion in limine seeking an order to prevent any witness or attorney from mentioning the allegations of sexual misconduct which were no longer part of the claim. The trial court refused to grant the motion.
On the morning of trial, the issue of admissibility of the sexual misconduct was again heard. Following oral argument, the trial court issued a per curiam ruling that Dr. Raviotta's sexual conduct with Jure did not constitute medical malpractice under Louisiana law and prohibited any reference to that relationship in the presence of the jury. Jure applied to this court for supervisory writs seeking a reversal of that order. Her application was denied.
Following trial on the merits, the jury returned a verdict in favor of Dr. Raviotta finding that he did not breach the standard of care of an OB/GYN in his treatment of Jure.
On May 17, 1991, judgment was entered in accordance with the jury verdict dismissing Jure's suit against the LPCF. It is from this judgment that Jure appeals asserting the following assignments of error:
1) The trial court erroneously ruled that Dr. Raviotta's sexual misconduct does not constitute medical malpractice under Louisiana law.
2) Even assuming arguendo that Dr. Raviotta's sexual conduct does not constitute medical malpractice, it was error for the trial court to prohibit any mention of it which must be considered with the other acts of malpractice within the totality of circumstances resulting in plaintiff's psychiatric and emotional damages.
3) The trial court erred in instructing the jury that the applicable standard of care to which the defendant should be held was that of OB/GYN when the evidence clearly showed that Dr. Raviotta was rendering treatment and making diagnoses peculiar to the specialty of psychiatry.
4) It was error for the court, when asked about the applicable standard by which the defendant should be judged, to infer that the jury should change its answer to jury interrogatory No. 1 that Jure could not recover for damages because of Dr. Raviotta's negligent psychiatric treatment.
5) The jury erred during its deliberations when they were erroneously instructed that they could not award damages for Dr. Raviotta's negligent psychiatric treatment.
For discussion purposes, the assignments raise two issue for our determination. First, we must decide whether alleged sexual misconduct between an OB/GYN and his patient fall within the definition of medical malpractice, and second, whether the jury verdict was clearly wrong.
I. THE MALPRACTICE ISSUE:
ASSIGNMENT OF ERROR 1:
Louisiana Revised Statute 40:1299.41(I), the Louisiana Medical Malpractice Act provides:
"Nothing in this Part shall be construed to make the patient's compensation fund liable for any sums except for those arising from medical malpractice."
In maintaining the LPCF's exception of no cause of action, the trial court stated:
"I have ruled that the allegations of sexual misconduct fall outside the definition of malpractice as found at R.S. 40:1299.41(8) which provides in part:
"Malpractice means any unintentional tort or breach of contract based on health care or professional services rendered....'"
The Medical Malpractice Act is special legislation. As such, coverage and liability under the act must be strictly construed. Sewell v. Doctor's Hospital, 600 So.2d 577 (La.1992); Williams v. St. Paul Insurance Company, 419 So.2d 1302 (La. App. 4th Cir.1982), writ den., 423 So.2d 1182 (La.1982).
Asserting there is no Louisiana jurisprudence on point, Jure cites several out of state cases in support of her argument. We find those cases distinguishable and not *228 dispositive.[1] Furthermore, a review of Louisiana jurisprudence clearly shows that the Act does not encompass every tort claim arising as a consequence of a physician/patient relationship. Rather, the definition of malpractice includes only an unintentional tort based on health care or professional services rendered. St. Amant v. Mack, 538 So.2d 657 (La.App. 1st Cir.1989), writ den., 594 So.2d 897 (La.1992).
In St. Amant, supra, the court held that the Act did not apply to an action brought by a father against a physician alleging the physician was involved in a conspiracy with the child's mother to deny the father visitation rights. In Reaux v. Our Lady of Lourdes Hospital, 492 So.2d 233 (La.App. 3rd Cir.1986), writ den. 496 So.2d 333 (La. 1986), the court held the act did not apply where the patient was allegedly assaulted, raped and battered in the hospital premises. In Head v. Erath General Hospital, 458 So.2d 579 (La.App. 3rd Cir.1984), writ den., 462 So.2d 650 (La.1985), and Stapler v. Alton Ochsner Medical Foundation, 525 So.2d 1182 (La.App. 5th Cir.1988), the plaintiffs, both slip and fall victims, alleged that the defendant health care provider committed medical malpractice causing their damages. The courts recognized that each plaintiff had a cause of action for ordinary negligence but not malpractice. Likewise, similar jurisprudence in other jurisdictions clearly shows that Medical Malpractice Acts in other states have been held inapplicable in similar situations.[2]
Thus, we find this assignment of error is without merit. The clear language of the Act and the jurisprudence interpreting it indicates that the intent of the legislature is to exclude from its scope conduct unrelated to the promotion of a patient's health or to the provider's exercise of professional expertise or skill. We agree with the trial judge that the allegations of sexual misconduct in this case does not constitute malpractice as defined by the Act.
ASSIGNMENT OF ERROR 2:
Fearing that any evidence of the sexual relationship between Dr. Raviotta and Jure "would inflame the jury to the prejudice of the fund", the trial court prohibited any reference to the relationship during the trial. Jure argues that the evidence of the sexual relationship was crucial to proving medical malpractice. We disagree.
Jure pursued her claim against Dr. Raviotta for his sexual misconduct and subsequently settled with his liability insurer. No such claim exists against the LPCF *229 pursuant to the Medical Malpractice Act. Jure reserved her rights to proceed against the LPCF on the other allegations of malpractice, including providing psychological counseling when Dr. Raviotta was not so qualified; indiscriminately and improperly administering/and or providing narcotic drugs to Jure and failing to refer Jure for proper psychiatric care and treatment.
Louisiana Code of Evidence Article 403 provides:
"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, or waste of time."
Dr. Raviotta's sexual misconduct was no longer part of the claim. The trial court determined that the potential for undue prejudice by inflaming the jury outweighed the probative value of such evidence. In making evidentiary rulings, the trial court is vested with broad discretion and these rulings will not be disturbed absent a clear abuse of discretion. See, Nicolosi v. Livingston Parish School Board, 441 So.2d 1261 (La.App. 1st Cir.1983), writ den. 444 So.2d 1243 (La.1984). Because Dr. Raviotta's sexual misconduct was no longer part of the claim, we agree with the trial court that any evidence of same would be more prejudicial than probative. We find no abuse of discretion in the trial court's ruling.
This assignment of error is without merit.
II. THE JURY VERDICT:
ASSIGNMENT OF ERROR 3:
Jure asserts the trial court erred by not instructing the jury that the proper standard of care was that of psychiatry and/or psychology. We disagree.
In a medical malpractice action, plaintiff's burden of proof is two-fold. First, the plaintiff must establish by a preponderance of the evidence that the physician's treatment fell below the ordinary standard of care expected of physicians in his medical specialty and second, plaintiff must then establish a causal relationship between the alleged negligent treatment and the injury sustained. La.R.S. 9:2794; Martin v. East Jefferson General Hospital, 582 So.2d 1272 (La.1991). Resolution of each of these inquiries are determinations of fact which should not be reversed absent manifest error. Martin, supra.
Dr. Raviotta is licensed and practices in the field of obstetrics and gynecology and was Jure's treating physician in that field. All of the alleged instances of malpractice occurred during the duration of that professional relationship. No evidence was presented that Dr. Raviotta was licensed in or practiced in the fields of psychiatry and psychology.
Thus, there was no error when the trial court charged the jury that the proper standard of care is that of an OB/GYN. This assignment of error is without merit.
ASSIGNMENT OF ERROR 4:
Jure asserts that it was reversible error for the trial court to suggest that the jury change its response to Interrogatory No. 1. This alleged irregularity occurred after the jury foreperson asked a specific question in connection with Interrogatory No. 2.[3] The alleged questionable interchange which took place between the trial judge and the jury foreperson is as follows:
"The Court: Will the forelady repeat the question for the sake of the record, please.
A Juror: Okay. The question was for question two, was such malpractice a cause of harm to the plaintiff that she would not have otherwise suffered, our questions was, were we supposed to be concerned with malpractice as far as his OB/GYN or any subsequent treatment to her, and part of your thing that you read back to us, I think you said that we were to only consider OB/GYN.
*230 The Court: Yes. The doctor is to be judged by the standard applicable to his specialty.
The Juror: To his specialty?
The Court: Yes. Now, if I can make an observation, I think the substance of your question should have been raised in answering No. I.
The Juror: That's what I pointed out. Okay.
The Court: In other words, the violation of standard is involved in number one. Number two asked what damages were caused and really, the emphasis its asking not otherwise would have occurred. It's emphasizing the fact that plaintiff may have, because of her previous condition, gone on and had some bad effect. She went to the doctor for care. You've got to determine what were the consequences of his malpractice, if any. In other words, not her whole condition, but what were the consequences of his malpractice.
The Juror: In the gynecological/obstetrical field.
The Court: His conduct is measured by that standard. If he went outside his field, that could be a violation of the standard applicable to him, but that depends on the standard that you heard evidence about, okay. If you have heard any such evidence, I'm not permitted to comment on the evidence. But if you heard evidence that there was a certain standard for OB/GYN and he treated beyond that standard, he's still measured by the standard applicable to OB/GYNS and the question is, is that malpractice or his own conduct excused under some fashion, okay. That is what this case is all about. Any other questions?"
We find no error in the trial court's response. It was adequate, appropriate and addressed the jury's question as to causation. We find no inference or suggestion that the jury should change its answer to Interrogatory No. 1.
This assignment of error is without merit.
ASSIGNMENT OF ERROR 5:
Jure asserts the jury erred in its verdict in light of the evidence produced at trial. We disagree.
Expert witnesses who are members of the medical profession are necessary sources of proof in medical malpractice actions to determine whether the defendant physician possessed the requisite degree of skill and knowledge, or failed to exercise reasonable care and diligence. Martin, supra; Frasier v. Department of HHR, 500 So.2d 858 (La.App. 1st Cir.1986). The determination of an expert's credibility is also a fact question subject to the manifest error/clearly wrong standard of review. Martin, supra.
The only OB/GYN to testify other than Dr. Raviotta, was Dr. James Bellina,[4] former associate and partner of Dr. Raviotta. Dr. Bellina offered no testimony as to the standard of care of an OB/GYN nor did he testify that Dr. Raviotta breached that standard.
Dr. Bellina stated that Dr. Raviotta told him Jure was having serious family problems after the birth of her child. He testified that treating an obstetric patient for emotional problems is common following the birth of a child and is usually associated with postpartal depression or anxiety. When asked how long such treatment should last, Dr. Bellina stated "it's a matter of personal feeling and how you feel as a physician." He testified that the longest he treated a patient for postpartal depression was three months. He testified that he suggested to Dr. Raviotta that he refer Jure for psychiatric treatment because he felt her problems went beyond normal postpartal depression. He stated that Dr. Raviotta did make the referral but Jure could not afford the treatment. When asked if Dr. Raviotta's prolonged free counseling of Jure violated office policy, Dr. Bellina stated, "We had the freedom to charge or not charge patients as we saw fit."
Dr. Bellina testified that several clinic employees expressed concern that Jure was *231 taking too much of Dr. Raviotta's time away from other patients, coming in unannounced and disrupting the clinic schedule. Dr. Bellina, however, stated that he had no medical or ethical concern with Dr. Raviotta's treatment of Jure.
Dr. Jay Seastrunk and Dr. Beverly Howze, experts in psychiatry and psychology, respectively, testified for plaintiff. Both witnesses testified that they had no personal knowledge of the facts, only treated Jure after suit was filed against Dr. Raviotta and based their opinions solely on the history and information provided by Jure. They each testified as to the standard of care of psychiatry and psychology and the alleged mishandling of the transfer phenomenon by Dr. Raviotta. Both stated they were not competent to testify as to the standard of care of an OB/GYN and declined to do so.
Jure testified that she was well aware that Dr. Raviotta was treating her as an OB/GYN and not as a psychiatrist or psychologist. In addition, she also admitted that Dr. Raviotta recommended and referred her to a psychiatrist but that she chose not to follow through.
Jure testified that Dr. Raviotta dispensed narcotic drugs and other medications to her in little white envelopes and that she became addicted to these drugs. No such envelopes or drugs were ever produced at trial even though Jure testified that at the time she retained counsel the envelopes and drugs were in her possession.
Jure stated she eventually ended her relationship with Dr. Raviotta after a failed suicide attempt. She asserted this suicide attempt was a result of Dr. Raviotta's "control" over her life. She admitted, however, to attempting suicide on at least six prior occasions dating back to age twelve. On cross-examination, Jure testified to a life-long struggle with drug abuse and uncontrollable and outrageous conduct including fifteen auto accidents and various instances of vandalism. She stated that Dr. Seastrunk, her own psychiatrist/expert, lied when he noted in her record that she told him she sold drugs and machine guns to support her drug habit.
Dr. Raviotta denied all the allegations asserted by Jure. He testified that he consistently suggested that Jure seek psychotherapy. He denied attempting to provide such care himself and consulted her family in an attempt to encourage her to see a psychotherapist. He stated he allowed her to continue to come to the office because it helped her adjust to her new role as a parent. He testified he felt it would do no good to deny her counseling until she could afford professional help. He stated he saw himself as "part of a support network" that she didn't have at home.
Dr. Raviotta denied dispensing large amounts of narcotic drugs to Jure. He stated on one occasion she had not slept in seventy two hours. He gave her sleeping pills but only enough to put her to sleep but not enough to harm her if she abused them.
It is well settled that a court of appeal may not set aside a finding of fact by a trial court or a jury in the absence of "manifest error" or unless it is "clearly wrong". Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluation and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Co., 283 So.2d 716 (La.1973).
When findings are based on a determination regarding the credibility of witnesses, the manifest error clearly wrong standard demands great deference to the trier of fact's findings. Only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Lirette v. State Farm Insurance Company, 563 So.2d 850 (La.1990), citing, Rosell, supra; Canter, supra.
As trier of fact, the jury may accept or reject all or part of the witness' testimony. Johnson v. Manis, 437 So.2d 359 (La.App. 4th Cir.1983), writ den. 441 *232 So.2d 1222 (La.1983); Payne v. New Orleans Public Service, Inc., 374 So.2d 189 (La.App. 4th Cir.1979). Reviewing the record as a whole, we cannot say the jury's assessment of the facts is clearly wrong.
For the reasons assigned above, the judgment of the trial court is affirmed. All costs of this appeal to be paid by appellant.
AFFIRMED.
NOTES
[1] In Cotton v. Kambly, 101 Mich.App. 537, 300 N.W.2d 627 (Mich.App.1980) the issue was whether a psychiatrist who engaged in sexual intercourse with his patient as part of his purported treatment of her constituted actionable malpractice. The court reversed summary judgment, and remanded for trial. In St. Paul Fire and Marine Company v. Mitchell, 164 Ga.App. 215, 296 S.E.2d 126 (Ga.App.1982), the issue involved whether plaintiff's assertions fell within the psychiatrist's malpractice insurance coverage. The case was before the court on a declaratory judgment sought by the insurer. Again, the allegations involved the purported treatment by a psychiatrist. Finally, in Wall v. Noble, 705 S.W.2d 727 (Tex.Ct.App.1986), the court never reached the issue of the physician's liability for sexual relations with the patient because the jury found that the physician had negligently performed breast life surgery.
[2] In Buchanan v. Lieberman, 526 So.2d 969 (Fla. App. 5th Cir.1988), the court held that sexual misconduct is intentional and fell outside the scope of the Florida Medical Malpractice Act. It is significant that the Florida Act does not define "malpractice" as unintentional. In Collins v. Thakkar, 552 N.E.2d 507 (Ind.App. 1st Dist.1990), the Court held the allegations of plaintiff that her OB/GYN developed a social affair involving periodic sexual intercourse with her did not fall within the scope of the Indiana Medical Malpractice Act. In Simmons v. United States, 805 F.2d 1363 (9th Cir.1986), the court stated:

"We note that courts do not routinely impose liability on physicians in general for sexual conduct with patients. See, e.g., Smith v. St. Paul Fire & Marine Ins. Co., 353 N.W.2d 130, 132 (Minn.1984).
The crucial factor in the therapist/patient relationship which leads to the imposition of legal liability for conduct which arguably is no more exploitative than sexual involvement of a lawyer with a client, a priest or minister with a parishioner, or a gynecologist with a patient is that lawyers, ministers and gynecologists do not offer a course of treatment and counseling predicated upon handling the transference phenomenon." at p. 1366. Emphasis added.
[3] The jury retired for deliberations and then returned to ask the specific question complained of.
[4] Dr. Bellina's testimony was introduced via his sworn deposition taken February 9, 1988.