732 So.2d 56 (1998)
Deborah A. WADSWORTH
v.
ABC INSURANCE COMPANY and Jaime Olivo, M.D.
No. 98-C-0486.
Court of Appeal of Louisiana, Fourth Circuit.
December 9, 1998.
Rehearing Denied January 15, 1999.
*57 Ernest L. O'Bannon, Celeste Brustowicz, Bienvenu, Foster, Ryan & O'Bannon, New Orleans, Louisiana, for Jaime Olivo, M.D.
Wayne Maldonado, Donald Klotz, Ungarino and Eckert, Metairie, Louisiana, for Hanover Ins. Co.
Joseph W. Thomas, New Orleans, Louisiana, and Adolph J. Levy, New Orleans, Louisiana, for Deborah A. Wadsworth.
Court composed of Chief Judge PATRICK M. SCHOTT, Judge WILLIAM H. BYRNES, III, Judge JOAN BERNARD ARMSTRONG, Judge JAMES F. McKAY, III and Judge JAMES C. GULOTTA, Pro Tempore.
JAMES C. GULOTTA, Judge Pro Tem.
This matter is before this Court on a writ grant of certiorari from the trial court's ruling dismissing defendants' exception of prescription. We reverse.
According to the petition, plaintiff alleges that the defendant was her treating physician, and despite his knowledge of her fragile physical condition, requiring numerous surgical procedures as a result of an automobile accident, as well as her fragile mental and emotional condition, resulting in her depression and alcoholism, defendant engaged in consensual ongoing sexual relations with plaintiff from 1983 to 1990. Plaintiff alleges that the last sexual encounter between the parties occurred on September 13, 1990 when she terminated the relationship. This lawsuit was filed on December 27, 1993.
Whether plaintiff's claim has prescribed depends on whether there existed a fiduciary relationship between the parties, as claimed by plaintiff, in which case, a ten year prescriptive period is applicable; or whether the claim is based on ex delicto requiring the applicability of the one year prescriptive period. See La. C.C. articles 3499,3492. If the claim is subject to a one year prescriptive period, plaintiff claims that the doctrine of contra non valentem applies to suspend the running of prescription.

FIDUCIARY RELATIONSHIP
It is clear from the wording of the petition that plaintiff's claim is not one in medical malpractice.[1] Her assertion of damages does not arise from any allegation of malpractice in her treatment. This suit is based on the damages caused from the claimed illicit relationship between the parties.
The initial question is whether, as a matter a of law, a fiduciary relationship exists between a physician and patient as a result of a long standing (over a period of approximately seven years) consensual sexual relationship, unrelated to any medical treatment, thereby creating a duty by the physician to the patient, a breach of which (caused by the sexual relationship) is compensable in damages. We think not.
The trial judge, in reasons for dismissing defendants' exception of prescription, stated:
This court is of the opinion that there exists a fiduciary relationship between doctor and patient; the breach thereof is not governed by the medical malpractice statute. The court recognizes that in the modern day practice of medicine it is possible to have a doctor/patient relationship where there is no fiduciary relationship. The questions to be determined by the trier of fact based upon the actual relationship between the patient and doctor are whether or not there was a fiduciary relationship and whether or not Dr. Olivo violated that relationship and breached a fiduciary duty owed by him to the plaintiff."
In Plaquemines Parish Com'n Council v. Delta Dev. Co., Inc., 502 So.2d 1034, *58 1040-1041 (La.1987), the Louisiana Supreme Court discussed the nature of a fiduciary relationship where violations of trust are claimed by persons in their roles as public officials and attorneys. The Court in the Plaquemines Parish case defines a fiduciary relationship in terms of a trust, a confidence and the advantage that one party may have over another. This definition is made in the context of a business or financial relationship.
Louisiana jurisprudence has acknowledged the existence of fiduciary obligations involving attorneys, stockbrokers, trustees, usufructuaries, executors, administrators and directors and officers of a corporation. State v. Hagerty, 251 La. 477, 205 So.2d 369 (1967), cert. denied, Hagerty v. Louisiana, 391 U.S. 935, 88 S.Ct. 1848, 20 L.Ed.2d 855 (1968); Office of the Comr. of Ins. v. Hartford Fire Ins. Co., 623 So.2d 37 (La.App. 1 Cir.1993), writ denied, 93-2125 (La.4/7/94), 635 So.2d 1131. However, we have been unable to find nor have we been cited any case law on the existence or nonexistence of a fiduciary relationship between a physician and patient.
The jurisprudence from other jurisdictions indicate that the relationship between patient and physician is a fiduciary one where there is an allegation of medical malpractice resulting from the treatment of the plaintiff. These cases are not helpful where a claim is made for damages growing out of a personal relationship between a physician and a patient, not growing out of a claim for malpractice resulting from negligence in treatment or intentional dereliction in medical treatment.[2]
In Atienza v. Taub, 194 Cal.App.3d 388, 239 Cal.Rptr. 454 (1987), the plaintiff filed suit alleging that her physician improperly engaged in a sexual relationship with her. According to the plaintiff, the defendant's initiation of a sexual relationship breached the duty of care which the defendant doctor owed to her. The court recognized that a physician who initiates a sexual relationship with a patient alleging it is part of the patient's treatment is guilty of malpractice. However, the court dismissed the plaintiff's suit finding that the sexual relationship existed outside the scope of the medical treatment rendered by the physician. The court stated that the plaintiff complained that "she had an unhappy affair with a man who happened to be her doctor. This is plainly insufficient to make out a cause of action for professional negligence." Atienza, 194 Cal.App.3d at 393, 239 Cal.Rptr. at 457.
Similarly, in Odegard v. Finne, 500 N.W.2d 140 (Minn.App.1993), the plaintiff filed suit seeking damages allegedly sustained as a result of a four month affair which admittedly was not induced under the guise of treatment. The court referred to Atienza and concluded that since the relationship was outside the scope of treatment, there was no breach of a professional duty.
While we recognize that ordinarily a dependence or trust relationship may exist between a physician and patient, an allegation of a breach of this relationship falls within a claim for malpractice or ex delicto. A physician who initiates a sexual relationship as part of the patient's treatment or therapy presumably might be held accountable for a violation of the duty owed to the patient under the Medical Malpractice *59 Act (La. R.S. 40:1299.41). However, where the alleged violation of a duty exists outside the scope of treatment of a patient, any claim based on the breach of a fiduciary relationship is less compelling. Such a claim would more appropriately fall within the parameters of ex delicto.
In the instant case, it is clear that the relationship which existed between the plaintiff and defendant was outside the scope of treatment. It was a consensual sexual relationship between two single adults. The defendant was consulted by plaintiff's treating physicians during her hospitalization in November of 1982. Plaintiff and defendant's relationship did not begin until several months after plaintiff had been discharged from the hospital.[3] Plaintiff never sought treatment at the defendant's office. Plaintiff also admitted that defendant never stated that the sexual relationship was part of her treatment.
We hold that plaintiff's reliance upon the ten year prescriptive period for personal actions is misplaced. Plaintiff's claim is tortious in nature and bound by the prescriptive period of one year.

CONTRA NON VALENTEM
Wadsworth claims that in the event there exists no applicable fiduciary relationship doctrine, liability exists in tort. Plaintiff's position is that although this suit was filed more than one year after the last sexual encounter between the parties, prescription was suspended by the doctrine of contra non valentem. We disagree.
The doctrine of contra non valentem agere nulla currit praescriptio[4] suspends the running of prescription where the circumstances of the case fall into one of four following categories: (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action; (2) where there was some condition coupled with a contract or connected with the proceedings that prevented the creditor from suing or acting; (3) where the debtor himself has done some act that effectually prevents the creditor from availing himself of his cause of action; and, (4) where the cause of action is not known or reasonably knowable by the plaintiff even though his ignorance is not induced by the defendant Wimberly v. Gatch, 635 So.2d 206 (La.1994).
The first two categories are not relevant to the instant case. However, plaintiff relies upon categories three and four to support her position that prescription has been suspended. According to plaintiff, because defendant prevented her from filing suit and because of her emotional and mental instability, she was unable to file her claim.

Where Plaintiff Claims Defendant Prevented Her From Filing Suit
In Bock v. Harmon, 526 So.2d 292 (La. App. 3 Cir.), writ denied 531 So.2d 275 (La.1988), plaintiffs, who were the children of the defendant, sued him for sexually abusing them when they were children. The suit was filed nearly three years after the last act of abuse. One of the plaintiffs was a minor but the other had reached majority a year and a half before suit was filed. The major plaintiff also lived in his father's home for nearly two years after reaching majority.
The trial judge dismissed the exception of prescription as it related to the minor child's claim, but granted it as to the major child. The major child offered the testimony of a psychiatrist who felt that he was prevented from taking action against his father because of his fear that his drug use would be revealed; his fear of embarrassment about the sexual abuse; the effect of *60 ingestion of drugs and alcohol, at his father's behest, resulting in his inability to recall events that transpired; his use of avoidance and suppression measures to deal with the abuse; and, his subjective belief that his father was omnipotent and that any action he took would be useless.
The Third Circuit, in affirming, rejected the argument that the major child was psychologically incapable of timely suing his father. The Bock court stated it was clear that plaintiff knew of the events giving rise to his cause of action against his father and knew that it was wrong to engage in such activities. The court further noted that the defendant took no affirmative overt action to prevent his son from filing suit against him. Moreover, plaintiff was not incarcerated in his father's home and chose to stay there because it was convenient.
In Held v. State Farm Ins. Co., 610 So.2d 1017 (La.App. 1 Cir.1992), writ denied 613 So.2d 975 (La.1993), the First Circuit dismissed a plea of prescription by a defendant father where, in his daughter's sexual abuse claim against him, the court concluded that because of the father's financial control, the plaintiff daughter was unable to seek therapy. When the daughter eventually received treatment, she was diagnosed as suffering from post-traumatic stress disorder. The delay, according to the court, was caused by the father in preventing his daughter from obtaining therapy. In Doe v. Roman Catholic Church, 94-1476 (La.App. 3 Cir. 5/3/95), 656 So.2d 5, writ denied 95-2076 (La.11/13/95), 662 So.2d 478, prescription was maintained when the court concluded that plaintiff clearly had the ability to act, but chose not to do so. See also Tichenor v. Roman Catholic Church, 95-0930 (La. App. 4 Cir. 12/14/95), 665 So.2d 1307, writ denied 96-0183 (La.3/15/96), 669 So.2d 424.
In the instant case, we fail to find support in the record which would lead to a conclusion that defendant prevented Wadsworth from filing suit other than having intercourse with her over a period of years when she was "vulnerable." The intercourse ceased more than three years before Wadsworth filed suit during which time each party went their separate ways and went on with their lives independent of each other.

Plaintiff's Claim of Emotional and Mental Instability Prevented Her From Filing Suit
In Laughlin v. Breaux, 515 So.2d 480 (La.App. 1 Cir.1987), plaintiff sued for injuries stemming from various acts of sexual and physical abuse that occurred over a two and a half year period. Defendant claimed that prescription had run as to those acts that occurred more than a year before suit was filed. In response, plaintiff argued that under contra non valentem and Corsey v. State, Through Dept. of Corrections, 375 So.2d 1319 (La.1979), prescription was suspended because she suffered from battered woman's syndrome which rendered her unable to file suit. The First Circuit, in Laughlin, rejected this argument because at the time of the alleged abuse plaintiff was running her own business, had discussed the situation with her friends, had called the police after an altercation with the defendant, and had sought counseling. The court also noted that the plaintiff was not married to or living with the defendant, circumstances that might have caused her to refrain from taking any legal action.
In Harrison v. Gore, 27,254 (La.App. 2 Cir. 8/23/95), 660 So.2d 563, writ denied 95-2347 (La.12/8/95), 664 So.2d 426, the plaintiff alleged that her former high school basketball coach molested and sexually harassed her between 1982 and 1985. She told close friends and counselors about the relationship and, one of those friends advised her in 1987 to sue him. In 1988, a therapist told plaintiff that what the coach had done to her was molestation; and, the plaintiff replied that she knew it was wrong but not that it was molestation. The Second Circuit stated that the plaintiff did not exhibit the silence intrinsic to the *61 victimization process, and that a year and a half after the last incident she knew she had avenues of legal redress but elected not to pursue them.
In the instant case, from our consideration of the record, we are led to conclude that plaintiff was fully aware of the cause of action she had against the defendant doctor nearly three years before she filed suit against him, as evidenced by her numerous visits to therapists and counselors. Dr. Barbara Hardin was the plaintiff's treating psychologist from 1983 to 1986. Dr. Hardin testified that the plaintiff recognized that the relationship with the defendant was harmful to her but she chose not to terminate the affair. Ms. Patricia Dunbar, a "psychotherapist", stated that the plaintiff had written a complaint to the medical society about the defendant but did not mail the letter.
Furthermore, plaintiff was sufficiently in control of her life during the period in question. She was able to initiate and settle a lawsuit for the injuries she sustained in the November 1982 automobile accident. She also filed an EEOC complaint against her employer in August 1990 without the aid of counsel, claiming she had not receive a promotion to which she was entitled.
During the period between 1984 and 1990, plaintiff traveled abroad, arranged for her own employment benefits and attended college and real estate school. As pointed out by the deposed psychotherapist, Wadsworth drafted, but did not mail, a letter to the medical society alleging that the defendant had improperly engaged in a sexual relationship with her. Plaintiff also was sexually involved with several other men during the time she and defendant had a sexual relationship.
Under these circumstances, we conclude that plaintiff was emotionally capable of filing her tort claim timely. We further conclude that no showing was made that defendant prevented Wadsworth from timely filing her tort action. Having failed to file suit within one year from the last sexual act between the parties, we hold that plaintiff's claim has prescribed.
Accordingly, we reverse and set aside the trial court's judgment dismissing defendants' plea of prescription. The prescription plea is maintained and plaintiff's suit is dismissed at her prejudice and at her costs.
JUDGMENT REVERSED AND SET ASIDE. SUIT DISMISSED.
ARMSTRONG, J., dissents with reasons.
ARMSTRONG, J., dissenting.
I respectfully dissent. I would deny relator's writ application without prejudice. After a trial on the merits, the trial court could revisit the prescription issues based upon a full evidentiary record. These issues include, without limitation, whether there was a fiduciary relationship and breach of fiduciary duty, whether there was medical malpractice and the applicability of the medical malpractice prescription statute, and the applicability of contra non valentem.
NOTES
[1] The parties acknowledge that the Medical Malpractice Act is not applicable to the present action. See La. R.S. 40:1299.41 et seq.; Jure v. Raviotta, 612 So.2d 225 (La.App. 4 Cir.1992), writ denied, 614 So.2d 1257 (La. 1993).
[2] See Lockett v. Goodill, 71 Wash.2d 654, 430 P.2d 589 (1967); Yates v. El-Deiry, 160 Ill. App.3d 198, 112 Ill.Dec. 105, 513 N.E.2d 519 (3rd Dist.1987)(where the pertinent issue involved conferences between plaintiff's treating physician and a legal adversary); Shadrick v. Coker, 963 S.W.2d 726 (Tenn.1998) (where the issue was whether the physician furnished the plaintiff with sufficient information for the patient to make an informed consent); McClellan v. Stanley, 978 S.W.2d 943 (1998); Tinnon v. Martin, 716 So.2d 604 (Miss.1998); Best v. Taylor Machine Works, 179 Ill.2d 367, 228 Ill.Dec. 636, 689 N.E.2d 1057 (1997)(involves disclosure and consent); Biddle v. Warren General Hospital, No. 96-5582, 1998 WL 156997, 1998 Ohio App. LEXIS 1273 (March 27, 1998)(involves confidentiality of patients' records); O'Keefe v. Orea, 731 So.2d 680 (Fla.App. 1 Dist. 1998)(involving psychiatric medical malpractice.)
[3] According to plaintiff's allegations, plaintiff was discharged from the hospital on January 30, 1983 and the sexual relationship between the parties began in April of 1983.
[4] Prescription does not run against those who cannot act.