I,Judge STEVEN R. PLOTKIN.
The issue raised by this appeal is whether allegations that an ultrasound technician took inappropriate sexual liberties with a female patient following the performance of an abdominal ultrasound ordered by the patient’s doctor, as well as related allegations against the technician’s employer, fall under the provisions of the Louisiana Medical Malpractice Act, LSA-R.S. 40:1299.41 et seq., thereby requiring that the allegations be submitted to a Medical Review Panel prior to the filing of suit as required by LSA-R.S. 40:1299.47(B). Plaintiffs Maria Estela and Raul R. Fuentes appeal a trial court judgment holding that their claims do fall under the Medical Malpractice Act and granting an exception of prematurity in favor of defendants, Charles Pleasant and Doctors Hospital of Jefferson. For the reasons stated below, we affirm the trial court judgment in part, reverse in part and remand the case to the trial court for further proceedings consistent with this opinion.
1 ¡.Facts
The original petition filed by the Fuenteses contains the following pertinent allegations:
3.
On or about April 14, 1999, plaintiff, Maria Estela Fuentes, reported to Doctors Hospital of Jefferson to have a trans-abdominal ultrasound performed as prescribed by her primary care physician, Dr. Aida Blasini.
4.
Upon arriving at Doctors Hospital, at approximately 11:00 a.m., Mrs. Fuentes was shown to an examining room by a white male, who was later identified as Charles Pleasant. Upon entering the examining room, Charles Pleasant instructed Mrs. Fuentes to remove all of her clothing, put on a gown and lie on the examining table, at which time Charles Pleasant locked the door, and proceeded to administer a trans-vaginal ultrasound examination instead of a trans-abdominal ultrasound.
5.
Charles Pleasant then willfully and maliciously sexually battered Mrs. Fuentes by performing a procedure he was not authorized to perform, including, but not limited to, inappropriately fondling her vaginal area, and inserting foreign objects into the vagina, at least three (3) times, without her permission, under the guise of authority of Doctors Hospital.
The petition further contains general allegations that Doctors Hospital was negligent in the following non-exclusive ways: (1) failure to perform a thorough criminal background check of its employees; (2) negligent hiring of employees; (3) negligent supervision of employees who are alone with patients; (4) failure to insure the safety of patients; (5) failure to require a nurse or technician to be present during Mrs. Fuentes’ examination; and (6) failure to insure the well-being of patients.
Both Mr. Pleasant and Doctors Hospital filed exceptions of prematurity to the Fuenteses’ original petition, asserting that the allegations of the petition assert Isdaims falling under the Louisiana Medical Malpractice Act, requiring that the claims be submitted to a Medical Review Panel prior to the filing of suit. LSA-R.S. *867 40:1299.47(B). Although the record of the case contains no documentation of the trial court’s actions on the defendants’ original exceptions, the defendants assert in brief that “[o]n July 14, 2000, the trial court heard oral argument, took defendants’ exceptions under advisement and granted plaintiffs 15 days in which to amend their petition.”
The Fuenteses did file a First Supplemental and Amending Petition, which contained the following pertinent allegations:
28.
Paragraph 4 of the original Petition for Damages is amended to read as follows:
Upon arriving at Doctors Hospital, at approximately 11 a.m., Mrs. Fuentes was shown to an examining room by a white male, who was later identified as Charles Pleasant. Upon entering the examining room, Charles Pleasant instructed Mrs. Fuentes to remove all of her clothing, put on a gown and lie down on the examining table, at which time Charles Pleasant proceeded to administer, what is referred to by Doctors Hospital as a trans-abdominal ultrasound.
24.
Paragraph 5 of the original Petition for Damages is amended to read as follows:
After the ultra-sound and all other medical procedures were completed, Charles Pleasant then proceeded to lock the doors on the examining room, removed the sheet off of Mrs. Fuentes’ legs exposing her vaginal area, spread her legs, and inserted his hands into her vagina, massaging her clitoris, and moreover, inserted objects into her vagina, objects which were unrelated to the prior medical procedure. Charles Pleasant then willfully and maliciously sexually battered Mrs. Fuentes by inappropriately fondling her vaginal area, and inserting foreign objects into the vagina, at least three (3) times, without her permission, under the guise of authority of Doctors Hospital.
Mr. Pleasant and Doctors Hospital again filed an exception of prematurity, which was granted by the trial court. The Fuenteses appeal, claiming that the allegations of their petition set forth an intentional act outside the provisions of the | ¿Medical Malpractice Act. The defendants claim however that the allegations of the Fuenteses’ petition are based in lack of informed consent. The defendants further claim that the Louisiana Supreme Court held in Lugenbuhl v. Dowling, 96-1575 (La.10/10/97), 701 So.2d 447, that the Medical Malpractice Act applies to lack of informed consent cases.
Sexual misconduct claims
Under the Louisiana Medical Malpractice Act, an action for malpractice against a qualified health care provider generally may not be commenced in a court of law before the complaint has been presented to a medical review panel and the panel has rendered its expert opinion on the merits of the complaint, unless the parties agree to waive this requirement. LSA-R.S. 40:1299.47. The right to have claims submitted to a medical review panel is a “principal advantage” for qualified health care providers, according to Hutchinson v. Patel, 93-2156, p. 3-4 (La.5/23/94), 637 So.2d 415, 419.
The Medical Malpractice Act applies solely to claims arising from medical malpractice, which is defined in LSA-R.S. 40:1299.41(A)(8) as “any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services *868 timely....” (Emphasis added.) LSA-R .S. 40:1299.41 A(7) and (9) further define “tort” and “health care” as follows:
“Tort” means any breach of duty or any negligent act or omission proximately causing injury or damage to another. The standard of care required of every health care provider, except a hospital, in rendering professional services or health care to a patient, shall be to exercise that degree of skill ordinarily employed, under | ¡¡similar circumstances, by the members of his profession in good standing in the same community or locality, and to use reasonable care and diligence, along with his best judgment, in the application of his skill.
‘Health care” is defined by LSA-RS. 40:1299.41(A)(9) as “any act, or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient’s medical care, treatment or confinement.”
This court has previously held that allegations of sexual misconduct do not constitute medical malpractice under the Act in Jury v. Raviotta, 612 So.2d 225 (La.App. 4 Cir.1992) because they do not qualify as unintentional torts. The court stated as follows:
The clear language of the Act and the jurisprudence interpreting it indicates that the intent of the legislature is to exclude from its scope conduct unrelated to the promotion of a patient’s health or to the provider’s exercise of professional expertise or skill.
Id. at 228. The above rule was not changed as the defendants argue, by the statement in Wadsworth v. ABC Insurance Co., 98-0486 (La.App. 4 Cir. 12/9/98), 732 So.2d 56, speculating that “[a] physician who initiates a sexual relationship as part of the patient’s treatment or therapy presumably might be held accountable for violation of the duty owed to the patient under the Medical Malpractice Act.” Id. at 4, 732 So.2d at 58-59. That statement is dicta in the context of a decision in which the physician in question engaged in consensual sexual relations with the plaintiff for a seven-year period. Id.
 Moreover, we reject the defendants’ arguments that the allegations of the Fuenteses’ petition set forth a claim for lack of informed consent, as opposed to improper sexual misconduct. A claim for lack of informed consent always arises out of medical treatment improperly administered to a patient without informing |fithe patient of dangers and problems inherent in the treatment. The lack of informed consent cases cannot be extended to allegations that a health care provider subjected a patient to improper sexual misconduct after a health care procedure had been completed. The fact that the Fuenteses stressed the fact that Mrs. Fuentes did not consent to Mr. Pleasant’s actions does not make this a lack of informed consent case. The allegations that Mrs. Fuentes did not consent were designed to show that the sexual relationship was not consensual. Thus, we reverse the trial court decision to the extent it holds that the allegations of sexual misconduct are covered by the Louisiana Medical Malpractice Act.
Claims against Doctors Hospital
As noted above, the Fuentes made six different allegations of negligence against Doctors Hospital, including failure to perform a background check, negligent hiring, negligent supervision, failure to insure patient’s safety, failure to require the presence of a nurse or technician during examinations, and failure to insure the well-being of patients. In support of its argument that the trial court properly dismissed the above claims, Doctors Hospital emphasizes the fact that all of the claims the Fuenteses alleged against it are clearly negligence claims. However, the fact that the allegations are *869 all based in negligence is insufficient in and of itself to meet the definition of “medical malpractice.” Critically, a negligent action qualifies as medical malpractice only if it is “based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient.” LSA-R.S. 40:1299.41(A)(8). Considering that definition, our review of the allegations of the Fuenteses’ petition reveals that the only claim against Doctors Hospital that is subject to the requirements of the ^Medical Malpractice Act is the claim for failure to require the presence of a nurse or technician during examinations. Because none of the other allegations fit the definition of medical malpractice, no Medical Review Panel review is required prior to the filing of suit. LSA-R.S. 40:1299.47. Accordingly, we reverse the trial court judgment to the extent it holds that the allegations against Doctors Hospital, other than the claim for failure to require the presence of another person during Mrs. Fuenteses’ examination, are covered by the Medical Review Panel.
Conclusion
The only allegations presented by the Fuenteses’ petition that is properly covered by the Medical Malpractice Act is the claim that Doctors Hospital failed to require the presence of another person during Mrs. Fuentes’ examination. The trial court judgment is affirmed to the extent it holds that that claim must be presented to a Medical Review Panel. Otherwise, the trial court judgment is reversed. The case is remanded to the trial court for further proceedings consistent with this decision.
AFFIRMED IN PART; REVERSED IN PART; REMANDED.