SUSAN M. CHEHARDY, Judge.
| ¡¡The plaintiffs appeal a judgment that granted the defendant hospital’s exception of prematurity, dismissing plaintiffs’ claims without prejudice on the ground the complaint must be reviewed by a medical review panel before the lawsuit can commence. We affirm in part, reverse in part, and remand.
FACTS AND PROCEDURAL HISTORY
Plaintiffs Dolores N. Buford and Ce-drick E. Buford sued John H. Williams and River Oaks, Inc. d/b/a River Oaks Hospital (“River Oaks”)[1] for damages arising from the rape of Dolores Buford by defendant Williams while she was a patient at River Oaks Hospital on October 25, 2009.[2]
Plaintiffs alleged that John Williams was an employee of River Oaks and that he is liable for his actions in engaging in non-consensual sex with Delores Buford, specifically rape. As to River Oaks, plaintiffs alleged that the hospital is liable for the acts of its employee under respondeat superior, and for the hospital’s own negligence in failing to properly superase, failing to properly train, failing to perform proper background checks, failing to take *543 positive action to prevent the |sincident, failure to provide Dolores Buford a safe and secure room after being admitted, and other acts to be shown at trial.
River Oaks filed a dilatory exception of prematurity, arguing that the claims against it are covered by the Louisiana Medical Malpractice Act and must be reviewed by a medical review panel before commencement of litigation.
After a hearing, the district court granted the exception and dismissed the suit as to River Oaks without prejudice. The plaintiffs appeal.[3]
ARGUMENTS ON APPEAL
On appeal the plaintiffs assert the district court erred in concluding that their claims are covered by the Medical Malpractice Act, that the plaintiffs were required to file a petition with a medical review panel prior to filing suit in the district court, and that the defendant’s exception of prematurity should be granted.
In opposition to the appeal, River Oaks asserts that the language of the Medical Malpractice Act mandates that this claim be panel-reviewed prior to suit because the allegations relating to the training and supervision of the offending employee are explicitly covered by the Medical Malpractice Act. Further, River Oaks argues, by alleging negligence with respect to the manner of the patient’s confinement, the plaintiffs-appellants have pleaded themselves squarely into the scope of the Medical Malpractice Act. In addition, since the petition asserts a claim for failure to monitor the patient, River Oaks asserts the allegations embrace the definitional language of the Medical Malpractice Act. Finally, River Oaks contends that the plaintiffs cannot escape coverage under the Medical Malpractice Act by alleging vicarious liability theories.
|„LAW AND ANALYSIS
The Louisiana Medical Malpractice Act is set out in La. R.S. 40:1299.41-1299.49. La. R.S. 40:1299.41(13) defines “malpractice” as follows, in pertinent part:
(13) “Malpractice” means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from, acts or omissions ... in the training or supervision of health care providers.... [Emphasis added.]
La. R.S. 40:1299.41(A)(22) defines “tort” as “any breach of duty or any negligent act or omission proximately causing injury or damage to another.”
Under the Medical Malpractice Act, a medical malpractice claim against a private qualified health care provider is subject to dismissal on an exception of prematurity if such claim has not first been presented to a medical review panel. La. R.S. 40:1299.47(A)(l)(a); LaCoste v. Pendleton Methodist Hosp., L.L.C., 2007-0008, p. 6 (La.9/5/07), 966 So.2d 519, 523.
The dilatory exception of prematurity questions whether the cause of action has matured to the point where it is ripe for judicial determination. La. C.C.P. art. 926; Williamson v. Hospital Serv. Distr. *544 No. 1 of Jefferson, 2004-0451, p. 4 (La.12/1/04), 888 So.2d 782, 785. An action is premature when it is brought before the right to enforce it has accrued. La. C.C.P. art. 423.
The burden of proving prematurity is on the exceptor, in this case the defendant health care provider; therefore, the defendant must show that it is entitled to a medical review panel. Williamson, 2004-0451 at 4, 888 So.2d at 785. | ¿Accordingly, the question before the court is whether the plaintiffs claim is one of medical malpractice. Id.
The Louisiana Supreme Court has repeatedly emphasized that the Medical Malpractice Act and its limitations on tort liability for a qualified health care provider apply only to claims “arising from medical malpractice,” and that all other tort liability on the part of the qualified health care provider is governed by general tort law. LaCoste, 2007-0008 at p. 6, 966 So.2d at 524. The limitations of the Medical Malpractice Act on liability of health care providers were created by special legislation in derogation of the rights of tort victims. LaCoste, 2007-0008 at p. 7, 966 So.2d at 524. Hence, any ambiguity should be resolved in favor of the plaintiff and against finding that the tort alleged sounds in medical malpractice. Id. The limitations of the Medical Malpractice Act, therefore, apply strictly to cases of malpractice as defined in the Medical Malpractice Act. Id.
The issue of whether a claim sounds in medical malpractice involves a question of law, so we conduct a de novo review. Hernandez v. Diversified Healthcare-Abbeville, LLC, 2009-546, pp. 1-2 (La.App. 3 Cir. 11/4/09), 24 So.3d 284, 285, writ denied, 2009-2629 (La.2/12/10), 27 So.3d 849.
The petition sets out the following allegations:
IV.
On or about October 25, 2009, the petitioner, DELORES BUFORD, checked into River Oaks Hospital to be treated for drug addiction.
V.
On the same day after checking in, BUFORD was in the shower when defendant, WILLIAMS, sneaked into her shower without consent and began washing plaintiff. Defendant, WILLIAMS, left after being confronted by plaintiff and told to leave.
VI.
Later that night and after plaintiff had taken medication to help her sleep, defendant, WILLIAMS, entered her room without consent and raped DELORES BUFORD in her bed at River Oaks Hospital.
JeVII.
At all material times, JOHN H. WILLIAMS, JR., was an employee of River Oaks Hospital.
VIII.
JOHN H. WILLIAMS, JR., is liable to the plaintiff for his actions in engaging in non-consensual sex with the plaintiff, specifically rape.
IX.
Universal Health Services and River Oaks Hospital, as the employer of WILLIAMS, are responsible for the acts of its employees, pursuant to the theory of respondeat superior.
X.
Further, Universal Health Services and River Oaks Hospital was negligent in this matter in the following ways:
A. Failing to properly supervise;
B. Failing to properly train;
*545 C. Failing to preform [sic] proper background checks;
D. Failing to take positive action to prevent the incident;
E. Other acts to be shown at the time of trial.
In a First Supplemental and Amending Petition, the plaintiffs made the following additional allegation:
II.
To supplement paragraph X to add as follows:
f. Failure to provide Dolores N. Buford a safe and secure room after being admitted.
For purposes of this appeal, the facts are not in dispute. The issue before us, therefore, is whether the district court correctly interpreted and applied the law. Appellate review of questions of law is simply a review of whether the trial court was legally correct or incorrect. Williams v. Notami Hospitals of Louisiana, Inc., 2004-2289, p. 5 (La.App. 1 Cir. 11/4/05), 927 So.2d 368, 372.
The question before the court was whether the allegations in the petition invoked coverage by the Medical Malpractice Act.
In Coleman v. Deno, 2001-1517, pp. 17-18 (La.1/25/02), 813 So.2d 303, 315-316, our supreme court set out the factors to determine whether a defendant’s factions are covered under the Medical Malpractice Act: (1) whether the particular wrong alleged is “treatment related” or caused by a dereliction of professional skill; (2) whether the alleged wrongdoing requires expert medical evidence to determine whether the appropriate standard of care was breached; (3) whether the pertinent act or omission involved assessment of the patient’s condition; (4) whether the act or omission occurred in the context of a physician-patient relationship or was within the scope of activities which a hospital is licensed to perform; (5) whether the injury alleged would not have occurred if the patient had not sought treatment; and (6) whether the tort alleged was not intentional.
At the hearing on the exception, River Oaks presented the testimony of Lori Susan Gillespie, R.N., a registered nurse employed by River Oaks Hospital with 18 years of experience in psychiatric nursing. Gillespie testified that the River Oaks Hospital Competency Based Job Description for John Williams, Jr. accurately describes the duties of a psychiatric counselor. This document was introduced at the trial of the exception as Exhibit A. It indicates that the psychiatric counselors are supervised by nursing staff, and that their role is to “assist in the care of the patient....” The Provision of Care section of the job description form indicates that psychiatric counselors “contribute to the provision of quality nursing care.”
Gillespie characterized the psychiatric counselors as “the 24/7 staff that are out there with the patient, talking with them, getting them to groups, making sure they get their vital signs taken, making sure they make it to meals, monitoring if they are on a visual status.”
Gillespie described how nurses utilize counselors to implement the nursing care rendered to patients. She explained that the psychiatric counselors are the employees giving the most direct care, assessment and monitoring of the patient. They report their assessment findings to the supervising nurse in charge of the unit. IsGillespie indicated that psychiatric counselors, as well as nurses, have to perform a “balancing act” to maintain patient safety, while at the same time providing the least restrictive environment possible.
*546 Gillespie’s testimony established that nursing staff is heavily involved in not only the supervision, but also the training of psychiatric counselors. Gillespie described the manner in which psychiatric counselor training performed by registered nursing staff covers the issue of “patient and staff interactions and boundaries.” She said the issue of sexual interactions with patients is explicitly discussed in psychiatric counselor training. Gillespie testified that the counselors are told “very specifically you may not have that type [sexual] relationship with patients.” Therapeutic boundaries in the Dual Diagnosis Unit, commonly referred to as “the detox unit,” are the subject of training on an ongoing basis. Staff members are taught that they should not be in a patient’s room when the door is closed. That rule was also set out in Exhibit E, Professional Conduct Policy, and Exhibit D, Guidelines for Potential Violations of Professional Conduct. Exhibit C, which was introduced during the hearing, documents that defendant Williams was specifically trained by nursing staff about subjects including “Patient and Staff Interactions/Boundaries.”
Gillespie noted that the units at the hospital are not sexually segregated, and that protecting the patients from all kinds of adverse events, including sexual offenses, is part of the medical care of the patients.
On cross examination, plaintiffs’ counsel attempted to elicit testimony that keeping patients safe is not part of medical treatment, but Gillespie did not agree:
[T]o be honest it would be very hard for me to separate it out because the whole issue of safety is what my job at the hospital is, is making sure that the care we are providing includes them being safe, whether it’s from the|3wrong medication or from another patient striking them, or a staff member who does something.
Gillespie testified that room assignments at the facility are often based on the assessment of patients, and she pointed out that the most vulnerable patients in need of closer supervision are placed in rooms which allow closer monitoring.
Gillespie indicated that the Director of Nursing interviews all potential employees, such as Mr. Williams, prior to the employees undergoing a second interview by the Human Resources Department.
Reviewing this evidence, we agree with the district court that the actions of River Oaks are within the definition of malpractice in La. R.S. 40:1299.41. (We distinguish between River Oaks’ direct actions and the allegations that River Oaks is vicariously liable for Williams’ actions) The direct allegations against the hospital are of negligence relating to the hospital’s responsibility arising from acts or omissions in the training or supervision of John Williams, as well as negligence in the supervision and handling of Dolores Buford as a patient.[4] Thus, the court correctly granted the exception of prematurity as to the negligence claims against River Oaks.
We distinguish Fuentes v. Doctors Hosp. of Jefferson, 2001-0305 (La.App. 4 Cir. 11/21/01), 802 So.2d 865, 869, cited by the plaintiffs. Fuentes involved a sexual *547 battery to a patient by an ultrasound technician, in which the plaintiff also made claims against the hospital for failure to provide the presence of a nurse or technician during examinations. The fourth circuit held that the claim for failure to provide a nurse/technician during the examination was covered by the Medical Malpractice Act, but the claims for negligent hiring, negligent supervision, and |insimilar allegations were not covered by the Act because none of the other allegations fit the definition of medical malpractice, as it was then set out in the Medical Malpractice Act. Fuentes, 2001-0305, p. 7, 802 So.2d at 869.
The incident in Fuentes, however, occurred prior to the legislative amendment of La. R.S. 40:1299.41 to add a hospital’s tortious failure “in the training or supervision of health care providers” to the definition of malpractice. Therefore, the Fuentes decision does not apply to the claims of River Oaks’ negligence here.
The general rule is that any conduct by a hospital of which a patient complains is within the scope of the MMA if it comes within the definitions of the MMA, even if there are alternative theories of liability. Richard v. Louisiana Extended Care Centers, Inc., 02-978 (La. 1/14/03), 835 So.2d 460. The current definition of malpractice appearing at La. R.S. 40:1299.41(A)(13), which is applicable in this case, specifically includes “all legal responsibility of a health care provider arising from acts or omissions ... in the training or supervision of health care providers.” “When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature.” La.Civ.Code art. 9. Because Plaintiffs’ claim is one of negligent supervision, and because negligent supervision is specifically defined as an act of malpractice under the MMA, as of the 2001 amendment, the MMA applies.
Dinnat v. Texada, 2009-665, pp. 4-5 (La. App. 3 Cir. 2/10/10), 30 So.3d 1139, 1142, writ denied, 2010-0540 (La.6/18/10), 38 So.3d 322.[5]
On the other hand, we find the district court erred in granting the exception of prematurity with a blanket ruling as to all the claims against River Oaks, including the claim that River Oaks is liable under respondeat superior for Williams’ rape of Dolores Buford.
| nEmployers are answerable for the damage caused by their employees in the exercise of the functions in which they are employed. La. C.C. art. 2320; Ermert v. Hartford Ins. Co., 559 So.2d 467, 475 (La.1990). Vicarious liability is imposed upon the employer without regard to his own negligence or fault; it is a consequence of the employment relationship. Sampay v. Morton Salt Co., 395 So.2d 326, 328 (La.1991).
The test is whether “the tortious conduct of the employee so closely connected him time, place, and causation to his employment-duties as to be regarded a risk of harm fairly attributable to the employer’s business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer’s interests.” LeBranc v. Lewis, 292 So.2d 216, 218 (La.1974). It can thus be regarded as within the scope of the employee’s employment, so that his em *548 ployer is liable in tort to third persons injured thereby. Id.
Our purpose in this appeal is not to determine whether River Oaks is in fact vicariously liable for Williams’ rape of Dolores Buford, but only to determine whether vicarious liability for the rape is within the scope of the Medical Malpractice Act.
As pertinent to this issue, the Medical Malpractice Act limits its definition of “malpractice” to “any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient....” La. R.S. 40:1299.41(13). The Medical Malpractice Act defines “tort” as “any breach of duty or any negligent act or omission proximately causing injury or damage to another.” La. R.S. 40:1299.41(A)(22)
|12Rape is an intentional tort.[6] An employer may have vicarious liability for intentional acts of an employee if the employee was acting within the course and scope of his employment. LeBrane, supra. Determination of course and scope is made by analyzing the acts through the factors set out in LeBrane v. Lewis, supra, and its progeny.[7]
An employer’s liability in respon-deat superior shares the nature of the employee’s act for which the employer is liable, because for vicarious liability, the employer is standing in the shoes of the employee.[8] Therefore, because rape is an intentional act, any vicarious liability of River Oaks for rape is also classified as an intentional act. As such, River Oaks’ vicarious liability is excluded from the Medical Malpractice Act.
DECREE
For the foregoing reasons, the judgment is affirmed as to the negligence claims, but reversed as to the claims for any intentional act. The case is remanded for further proceedings in accord with this opinion. Costs of this appeal are assessed equally against the parties.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

. River Oaks, Inc. d/b/a River Oaks Hospital was incorrectly named in the petition as "Universal Health Services, Inc., as owner/operator of River Oaks Hospital."

. Although Cedrick Buford seeks damages for loss of consortium, his relationship to Dolores Buford is not stated in the petition.

. The plaintiffs also filed an application for supervisory writs, which this Court dismissed on the ground that the proper mode of review for this judgment is by appeal rather than by writ application. Buford v. Williams, 11-318 (La.App. 5 Cir. 4/4/11) (unpublished writ disposition).

. "A hospital is bound to exercise the requisite amount of care toward a patient that the particular patient's condition may require. It is the hospital’s duty to protect a patient from dangers that may result from the patient’s physical and mental incapacities as well as from external circumstances peculiarly within the hospital’s control. A determination of whether a hospital has breached the duty of care it owes to a particular patient depends upon the circumstances and the facts of that case.” Hunt v. Bogalusa Cmty. Med. Ctr., 303 So.2d 745, 747 (La.1974).

. Dinnat distinguished two earlier cases, finding the prior cases inapplicable because the facts in both occurred prior to the 2001 amendment to the Medical Malpractice Act’s definition of malpractice. Id., 2009-665, p. 4, 30 So.3d 1139, 1141-42.

. See, e.g., Paul v. Montesino, 535 So.2d 6, 7 (La.App. 4 Cir.1988), writ denied, 536 So.2d 1222 (La.1989): "A rape necessarily requires the intentional use of force and/or violence upon the person of another. Although all batteries are not rapes, all rapes necessarily are batteries.”

. For contrasting determinations that were fact-dependent, see Baumeister v. Plunkett, 95-2270 (La.5/21/96), 673 So.2d 994 (hospital held not liable for sexual assault by one employee on another employee), and Samuels v. Southern Baptist Hospital, 594 So.2d 571 (La. App. 4 Cir. 1992), writ denied, 599 So.2d 316 (La.1992) (hospital held liable for rape of patient by nursing assistant).

."Although the employer and employee are not joint tortfeasors, they are nonetheless each obligated for the same thing[,] total reparation of the damages to the victim. The derivative nature of the employer’s liability is of no concern to the victim, and he can compel either the employer or the employee to compensate him for the whole of his damages.” Sampay, 395 So.2d at 328.