## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 12-802


## SUCCESSION OF JAMES ROBERT COLE, SR.


**********

APPEAL FROM THE
ELEVENTH JUDICIAL DISTRICT COURT
PARISH OF SABINE, NO. 59,854
HONORABLE STEPHEN BRUCE BEASLEY, DISTRICT JUDGE

**********

## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and Phyllis M. Keaty, Judges.


**AFFIRMED.**


**Byron Andrew Richie**
**Richie, Richie & Oberle, L.L.P.**
**P. O. Box 44065**
**Shreveport, LA 71134**
**Telephone: (318) 222-8305**
**COUNSEL FOR:**
     **Appellant - Cynthia Anne Cole**

**Robert Patrick Vance**
**Jones, Walker, Waechter, Poitevent, Carrére & Denégre, L.L.P.**
**201 St. Charles Avenue – Suite 5100**
**New Orleans, LA 70170-5100**
**Telephone: (504) 582-8336**
**COUNSEL FOR:**
     **Appellee - James R. Cole, Jr., Individually**

**Jean-Paul Perrault**
**McGlinchey, Stafford, P.L.L.C.**
**301 Main Street - Suite 1400**
**Baton Rouge, LA 70801-1916**
**Telephone: (225) 383-9000**
**COUNSEL FOR:**
     **Appellee – James R. Cole, Jr., as Executor**

**THIBODEAUX, Chief Judge.**

In this dispute over the appropriate disposition of shares of bank stocks inherited by two siblings, legatee Cynthia A. Cole (Cindy) appeals from a judgment dismissing her attempt to rescind a compromise and her claim of a breach of fiduciary duty, and granting the exceptions of her brother, co-heir, and executor of her father's estate, James Robert Cole, Jr. (Jim). For the following reasons, we affirm the judgment of the trial court.

I.

**ISSUES**

We must decide:

(1)     whether the trial court manifestly erred in finding a compromise between the parties and in granting Jim Cole's exception of res judicata;

(2)     whether the trial court erred in granting Jim Cole's exception of prescription and dismissing Cindy Cole's claims for damages for breach of fiduciary duty; and

(3)     whether the trial court abused its discretion in charging one half of the litigation expenses to the estate.

II.

**FACTS AND PROCEDURAL HISTORY**

The deceased, James Robert Cole, Sr. (Mr. Cole), was the majority stockholder of Sabine Bancshares, Inc. (SBI), a bank holding company which owned 100% of the shares of Sabine State Bank & Trust Company in Sabine Parish, Louisiana. In 2006 Mr. Cole executed a six-page will naming his son Jim as the executor of his succession. At the time of his death in April 2007, Mr. Cole owned 7,041 shares, representing 70.67%, of the 9,963 outstanding shares in SBI; Jim and Cindy each owned 1,406 shares; and thirteen other shareholders owned a total of 110 shares. Mr. Cole's will provided for special bequests of movable and immovable property, specific charitable donations, and it created a family trust for the

grandchildren, naming Jim as trustee and bequeathing 1,000 shares of the SBI stock to the trust. The remaining 6,041 shares of SBI stock fell to the residual estate which Mr. Cole left to his two children, Jim and Cindy, to "share and share, alike."

As executor of the succession, during the eight months following his father's death, Jim filed approximately twenty-five petitions seeking authority to continue business, pay estate debts, invest funds, sell timber, and sell immovable property in private sales and public auctions. One of the directives in the will instructed that the new trust created by the bequeathal of 1,000 shares of SBI stock, be free of all estate and inheritance taxes of any nature, with all such taxes to be paid from the residual estate. The federal estate and gift transfer taxes owed by the succession came to approximately twenty-one million dollars, and they were due on January 17, 2008.

On December 10, 2007, Jim filed a twelve-page petition for authority to apportion the 6,041 shares of SBI stock, and the tax liability, equally between himself and Cindy. The petition asserted that, while the executor [Jim] had netted $9,466,207.00 for the succession, there remained a cash deficiency of $11,327,003.00 for the taxes due the following month. It sought authority for the executor to borrow up to $8,000,000.00 and to collect $1,971,550.00 each, from Cindy and Jim, via advances on their inheritances. The petition further sought authority to sell over 400 of Cindy's shares of SBI stock to fund her cash contribution.

On January 4, 2008, Cindy filed an opposition to the December 10 petition, asserting that the succession had the financial capacity to borrow all of the funds necessary to meet the tax liability without using the "extraordinary" means suggested by Jim. She further asserted that Jim had failed in his duty as succession representative to act in the best interest of the succession and its legatees by refusing to consider alternative means of obtaining the funds to pay the taxes.

On January 7, 2008, the trial court conducted a contradictory hearing on Jim's December 10 petition and Cindy's opposition to it. Both Jim and Cindy were present, and both were represented by counsel. After the entry of opening statements, exhibits, stipulations, and some testimony by Cindy, the court recessed. When court reconvened, the parties had reached an agreement, the terms of which were read into the record by Jim's attorney, characterizing the agreement as a compromise. Cindy's attorney agreed to the stipulated agreement as cited and further stipulated that Jim had "complied with his fiduciary obligation as succession representative insofar as the payment of the federal estate and generation skipping tax."

On January 23, 2008, the parties jointly submitted and signed a consent judgment entitled, *Judgment on Petition by Succession Representative for Authority Filed December 10, 2007*. The 2008 consent judgment authorized the executor [Jim] to apportion the 6,041 shares of SBI stock equally between Jim and Cindy, allocating 3,020.5 shares to each. Subsequently, Cindy obtained new counsel, and a dispute arose over the division of the shares. The premise of Cindy's dispute is that she inherited an undivided interest in 6,041 shares, whose value as a controlling majority block was severely diminished by the in-kind division authorized in the consent judgment. She apparently seeks a partition by licitation at some point.

Cindy attempted unsuccessfully in March 2011 to get Jim to join her in a motion to modify and partially annul the 2008 consent judgment. Jim filed a petition for a declaratory judgment confirming the 2008 consent judgment.

On May 26, 2011, Cindy filed reconventional demands seeking to set aside the 2008 consent judgment; seeking a declaratory judgment regarding the indivision ownership of the stock; and seeking damages and attorney fees for breach of fiduciary duty resulting in diminution of the value of the allocated shares.

Jim filed exceptions of res judicata and no cause of action as to Cindy's demands for setting aside the 2008 consent judgment, and he filed an exception of

prescription as to Cindy's demand for damages for breach of fiduciary duty. Due to a dispute over the succession's attorney fees, Jim also filed a motion for payment of attorney fees.

Following a contradictory hearing, the trial court dismissed Cindy's claims regarding the allocation of the stock, declaring that the 2008 consent judgment was a valid and enforceable compromise not subject to set aside or modification on any of the grounds asserted. The judgment declared that the 6,041 shares of SBI stock would be divided in kind with 3,020.5 shares going to each, Jim and Cindy, after all debts and charges of the succession were paid.

The court's judgment granted Jim's exception of res judicata regarding the preclusive effect of compromise; it pretermitted Jim's exception of res judicata as it pertained to a final judgment; and it pretermitted Jim's exception of no cause of action.

The judgment also granted Jim's exception of prescription as to any and all of Cindy's claims based upon breach of fiduciary duty; and it granted in part and denied in part Jim's request for the payment of attorney fees from the succession. Cindy filed the appeal. We must affirm the judgment of the trial court.

III.

## STANDARD OF REVIEW

"The standard of review of a ruling sustaining an exception of res judicata is manifest error when the exception is raised prior to the case being submitted and evidence is received from both parties." *Steckler v. Lafayette Consol. Gov't*, 11-427, p. 2 (La.App. 3 Cir. 11/2/11), 76 So.3d 161, 164 (citations omitted). An appellate court may not set aside a trial court's findings of fact in absence of manifest error or unless it is clearly wrong. *Stobart v. State, Through DOTD*, 617 So.2d 880 (La.1993); *Rosell v. ESCO*, 549 So.2d 840 (La.1989).

4

IV.

## LAW AND DISCUSSION

**ISSUE (1): THE 2008 CONSENT JUDGMENT**

Cindy now challenges the validity of the 2008 consent judgment as a compromise and an apportionment of the inherited stock, asserting that it should be set aside on grounds of mutual error, exceptional circumstances, the capacity of Jim individually and as executor, non-compliance with notice/publication requirements, violation of the Bank Holding Company Act of 1956, and provisional partition. We find no manifest error in the trial court's judgment dismissing these claims for the following reasons.

### *Compromise*

Compromise is governed by La.Civ.Code arts. 3071 through 3083. "A compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or uncertainty concerning an obligation or other legal relationship." La.Civ.Code art. 3071. It must be "made in writing or recited in open court" rendering it "susceptible of being transcribed from the record of the proceedings." La.Civ.Code art. 3072. "A compromise precludes the parties from bringing a subsequent action based upon the matter that was compromised." La.Civ.Code art. 3080.

Compromise agreements made to avoid litigation are favored by law, and courts will not declare a settlement void without a clear showing that it violates good morals or the public interest. *Brignac v. Brignac*, 96-1702 (La.App. 3 Cir. 6/18/97), 698 So.2d 953, *writ denied*, 97-2584 (La. 1/16/98), 706 So.2d 976.

> The essential elements of a compromise are (1) mutual intention of putting an end to the litigation and (2) reciprocal concessions of the parties in adjustment of their differences. The Code also specifically requires a contract in writing. The party urging an exception of res judicata based on a contract of compromise has the

burden of proving each of the essential requirements by a preponderance of the evidence.

*Rivett v. State Farm Fire and Cas. Co.*, 508 So.2d 1356, 1359 (La.1987) (footnotes omitted).

Here, the trial court found that the first element of compromise was satisfied because Cindy and Jim appeared at the January 2008 hearing on Jim's disputed petition of December 10th which specifically asked for a partition of the 6,041 shares of SBI stock in the residual estate. During a recess of the hearing, the parties expressed their intent to resolve the issues in the petition and thereafter placed a compromise before the court and read it into the record, making apparent the mutual intention of putting an end to this step of the litigation.

The trial court found the second element of a compromise met because Jim and Cindy made reciprocal concessions in adjustment of their differences. In the December 10th petition, Jim had sought to apportion the stock equally, or in kind, resulting in the separate ownership of 3,020.5 shares each; he also sought authority to reduce Cindy's allocated shares from 3,020.5 to 2,604.5 and to sell those 416 shares for book value in order to pay what he considered Cindy's portion of the estate taxes, $1,971,550.00. Cindy did not want her shares reduced and sold, and she did not want to contribute $1,971,550.00 toward the payment of estate taxes. She wanted the estate to borrow all funds needed for the difference between the tax debt and the cash on hand, approximately $12,000,000.00, instead of borrowing only the $8,000,000.00 that Jim had initially suggested.

Jim conceded, agreeing to apportion the stock at 3,020.5 shares each, without reducing Cindy's allocation and without selling 416 of her shares to pay the taxes; Jim further agreed to borrow up to $12,000,000.00 for the payment of taxes, instead of $8,000,000.00; and he withdrew the requirement of the $1,971,550.00 contribution from Cindy toward the payment of taxes. Cindy in turn stipulated that

6

Jim had fulfilled his fiduciary duty in funding the tax liability, thereby foregoing future litigation on that issue.

The trial court found that the writing requirement was also satisfied. The compromise was recited into the record in open court on the day of the hearing, January 7, 2008, becoming part of the written minutes and written transcript of the hearing. It was then recorded as a consent judgment signed by the court on January 23, 2008. Accordingly, the elements of a compromise are met under La.Civ.Code arts. 3071 and 3072.

The compromise in this case also became a consent judgment wherein the trial judge ORDERED, ADJUDGED, AND DECREED fourteen issues between the parties.

> A consent judgment is a determination of the rights of the parties and acquires the authority of the thing adjudged. *McLain v. McLain*, 486 So.2d 1044 (La.App. 2d Cir.1986); *Townsend v. Townsend*, 421 So.2d 969 (La.App. 3d Cir.1982), *writ denied*, 427 So.2d 1211 (La.1983). The thing adjudged is said of that which has been decided by final judgment, from which there can be no appeal, either because the appeal did not lie, or because the time fixed by law for appealing is elapsed, or because it has been affirmed on appeal. La. C.C. art. 3556(31); *McLain*, 486 So.2d at 1046.

*Thibodeaux v. Thibodeaux*, 511 So.2d 102, 105 (La.App. 3 Cir. 1987).

> A consent judgment is, by its very nature, an agreement between the parties to resolve their differences and as such, it is not limited by the pleadings. In other words, while the relief granted by the courts is limited by the demands of the parties, the parties can, by agreement, expand on that authority by means of a consent judgment.

*McLain*, 486 So.2d at 1047.

Here, Cindy did not appeal or challenge the validity of the 2008 compromise and consent judgment for over three years. She now assigns six errors by the trial court in its April 2012 judgment for refusing to set aside the 2008 consent judgment.

### *Mutual Error*

Cindy asserts that the trial court erred in finding that the ownership interest of the stock was knowingly in dispute at the January 7, 2008 hearing and in failing to set aside the compromise on the basis of mutual error. We disagree. "A compromise may be rescinded for error, fraud, and other grounds for the annulment of contracts. Nevertheless, a compromise cannot be rescinded on grounds of error of law or lesion." La.Civ.Code art. 3082. Cindy argues that the allocation in the compromise embodies an erroneous interpretation of her father's testament, which she claims was a factual error that can be used to rescind a compromise. This argument has no merit. The interpretation of a testament is a question of law. *Succession of Collett*, 09-70 (La.App. 3 Cir. 6/3/09), 11 So.3d 724, *writ denied*, 09-1485 (La. 10/2/09), 18 So.3d 112. It, therefore, cannot form the basis for the rescission of a compromise.

Cindy cites La.Civ.Code art. 3076, which states: "A compromise settles only those differences that the parties clearly intended to settle, including the necessary consequences of what they express." La.Civ.Code art. 3076. The record is clear that the apportionment of the stock was intended to be a part of the compromise. Cindy knew about stock valuations, and she wanted the apportionment. The expert report that Cindy explains in depth as establishing the value difference between majority and minority shares was issued in November of 2007 *before* the January 2008 hearing, compromise, and consent judgment.

Further, in her deposition on December 18, 2007, Cindy testified that she had read the will and understood that the residual estate was to be divided equally between herself and Jim. She stated at least four times that she agreed to the allocation of 3,020.5 shares to each of them. Following the consent judgment in 2008, Cindy's second set of attorneys filed pleadings in 2009 and 2010 asserting that the will of the deceased bequeathed half of the stock at issue to Jim and half to Cindy. It

8

was not until Cindy hired her third set of attorneys that she argued in May of 2011 that the apportionment was not part of the compromise. Under La.Civ.Code art. 3076, the ultimate loss in value was a necessary consequence of the division of the shares in the compromise.

*Exceptional Circumstances*

Cindy asserts that the trial court erred in failing to set aside the 2008 judgment based upon "exceptional circumstances" pursuant to La.R.S. 13:4232(A)(1), which provides exceptions to the general rule of res judicata. It states, in pertinent part, that "[a] judgment does not bar another action by the plaintiff [w]hen exceptional circumstances justify relief from the res judicata effect of the judgment." La.R.S. 13:4232(A)(1). The exceptional circumstance urged by Cindy and considered by the trial court was "the unknowing destruction of a controlling interest in a $685,000,000.00 corporation." The statute's historical notes provide that the discretion given to the judge to grant relief from a judgment for exceptional circumstances "is necessary to allow the court to balance the principle of res judicata with the interests of justice." La.R.S. 13:4232, Comment - 1990. However, this "discretion must be exercised on a case by case basis and such relief should be granted only in truly exceptional cases, otherwise the purpose of res judicata would be defeated." *Id*.

The trial court found that the stock was susceptible to division in kind and that such partitions in kind are favored by law under La.Code Civ.P. art. 4606.[1] The trial court articulated that, while dividing a majority block of stock equally between two heirs may decrease its fair market value because of the loss of the control

_____

[1]Louisiana Code of Civil Procedure Article 4606 provides: "Except as otherwise provided by law, or unless the property is indivisible by nature or cannot conveniently be divided, the court shall order the partition to be made in kind."

9

premium, the court could "think of no instance where that would not be true for *any* close[d] corporation as it is the nature of the corporate beast." Where the court found no exception carved out for corporate shares, it concluded that the loss of value was commonplace rather than exceptional in corporate existence. It, therefore, did not rise to the degree necessary to defeat a claim of res judicata.

The trial court further found that Cindy had knowledge of the valuation and control premium before the 2008 judgment and that she should have raised the issue or reserved it prior to signing the consent judgment. We agree. Comment – 1990 to La.R.S. 13:4232 states that the exception for exceptional circumstances "is not intended to apply in the case where the plaintiff has simply failed to assert a right or claim for damages through oversight or lack of proper preparation." Accordingly, we find no abuse of the trial court's discretion in declining to find exceptional circumstances.

### *Provisional or Definitive Partition*

Cindy asserts that the trial court erred in failing to set aside the allocation as a "provisional" partition rather than a "final" partition. We disagree. While the trial court did not provide written reasons on this issue, the Louisiana Civil Code provides for the nature of the partition of succession property:

> **Art. 1295. Definitive and provisional partitions, definitions**
>
> Every partition is either definitive or provisional:
>
> Definitive partition is that which is made in a permanent and irrevocable manner;
>
> Provisional partition is that which is made provisionally, either of certain things before the rest can be divided, or even of everything that is to be divided, when the parties are not in a situation to make an irrevocable partition.
>
> **Art. 1296. Definitive and provisional partitions, distinguished**

> By definitive partition is also understood the judicial partition, made according to law; and by provisional partition, that in which the formalities prescribed by law have not been observed, or that by which the parties are not definitively bound.

The allocation of shares in this case was definitive because the matter was settled in a valid compromise, and, as previously indicated, the formal requirements of a compromise under La.Civ.Code art. 3072 were met. The compromise has, as between the interested parties, a force equal to the authority of things adjudged. La.Civ.Code art. 3078. Further, in this case, the compromise containing the allocation became a signed judgment of the court; therefore, it was a judicial partition which is a definitive partition under La.Civ.Code art. 1296. We find the following case instructive.

In *Lapeyrouse v. Lapeyrouse*, 98-0271 (La.App. 1 Cir. 2/19/99), 729 So.2d 682, the parties in ongoing litigation, prior to the trial to partition the community property, notified the court that the matter had been settled, and both parties executed a partition of community property agreement. In addition to the agreement, a consent judgment was prepared and approved both by the plaintiff's attorney and the defendant's attorney, and it was signed by the trial court and attached to the court's judgment. When the husband filed a pleading to rescind the partition for lesion under La.Civ.Code art. 814,[2] the first circuit concluded that the partition at issue was a judicial partition and that an action for lesion would lie only against an

---

[2]We further note that La.Civ.Code art. 814 allows rescission of an *extrajudicial* partition for lesion "if the value of the part received by a co-owner is less by more than one-fourth of the fair market value of the portion he should have received." Here, the fair market value of the stock was settled with the IRS at $6,000.00 per share. One fourth (¼) or 25% of $6,000.00 is $1,500.00. Therefore, to rescind a partition for lesion under Article 814, if there were a determination of extrajudicial partition, which there is not, there must be a loss greater than $1,500.00 per share. Cindy asserts a book value of $4,636.00 and a loss of $1,364.00 per share for the loss of the control premium. Therefore, the loss per share would not be enough to rescind the partition for lesion under Article 814. Further, as previously stated, the partition here was a compromise, which "cannot be rescinded on grounds of error of law or lesion." La.Civ.Code art. 3082.

extrajudicial partition. It, therefore, upheld the exception of no cause of action and dismissed the plaintiff's suit.

Similarly, in *Daigle v. Daigle*, 06-346 (La.App. 3 Cir. 9/27/06), 940 So.2d 891, *writ denied*, 06-2914 (La. 2/16/07), 949 So.2d 418, when the husband sought to annul the parties' original partition of community property, arguing that it was extrajudicial and subject to rescission on the grounds of lesion, pursuant to La.Civ.Code art. 814, our court found that his action was barred by res judicata. Our court stated that Daigle's request that the trial court partition the community property merely asked the trial court to do what had already been done. The original partition was not an extrajudicial partition, but one approved by the trial court four years earlier; therefore, the consent judgment was final, and options for reversal had prescribed and no longer existed.

> It is the public policy of our judicial system to provide an unalterable method to terminate litigation. The Louisiana Supreme Court has consistently held that legally confected in-court judicial settlements are binding. *Collins v. Capital Valve and Fitting Co.*, 409 So.2d 579 (La.1982); *Felder v. Georgia Pacific Corp.*, 405 So.2d 521 (La.1981).

*Adams v. Adams*, 529 So.2d 877, 879 (La.App. 4 Cir.), *writ denied*, 533 So.2d 363 (La.1988).

### *Publication of Notice*

Cindy further contends that the trial court erred in not setting aside the compromise where Jim failed to publish notice of the compromise pursuant to the La.Code Civ.P. arts. 3198 and 3229. Article 3198 provides that a succession representative may "[e]ffect a compromise of an action or right of action by or against the succession" with court approval "after notice as provided by Article 3229." Article 3229 provides that notice of an application for a court order under certain articles, including Article 3198, be published once in the parish where the succession proceeding is pending.

Citing *Couret v. Couret*, 206 La. 85, 18 So.2d 661 (La.1944), the trial court found that Cindy had waived her right to attack the judgment procedurally when she knowingly, and with advice of counsel, consented to its rendition. Citing *Brown v. Sutton*, 356 So.2d 965 (La.1978), the trial court stated that because Cindy was present and well-represented by competent counsel, the lack of formal notice was cured by actual notice. We find no manifest error in the trial court's finding.

### *Capacity*

Cindy asserts that Jim appeared in the compromise as the succession representative, and not in a personal capacity. Thus, there was no compromise between the co-heirs, only a compromise between Cindy as co-heir and Jim as succession representative. This argument has no merit. While Jim did file the 2007 petition for authority, and the 2008 compromise and consent judgment, as the executor of the succession, he also appeared personally as the only other co-heir. Contrary to Cindy's assertions attempting to analogize this compromise to the compromise in *Succession of Ramp*, 212 So.2d 419 (La.1968), there were no absent heirs when the compromise was confected. Jim was not absent, he was physically there in person with Cindy, and they, alongside their attorneys, effected the compromise together as the only two heirs to the succession.

The trial court found that Jim acted in a dual capacity for a number of reasons: (1) the verification affidavit of the December 2007 petition adds Jim as an individual co-heir and bespeaks his individual intent; (2) Jim effected the 2008 compromise and consent judgment with added individual capacity where the judgment referred to him as the succession representative, and it also adjudicated his individual rights via the obligation that he personally loan nearly two million dollars to the succession; (3) the succession was powerless to obligate a co-heir to a personal loan; therefore, it was Jim's "additional, present and appearing capacity as individual

co-heir that personally obligated him . . . [and] his two personas became fused in the 2008 Judgment;" (4) Cindy's "wrong hat" claim must be available for all co-heirs, including Jim, and there would be no logic in allowing Jim to unravel his personal obligation and back out of the personal loan because he was wearing the hat of executor of the succession. We agree with the trial court, "one mind obligated two personas."

### *Bank Holding Company Act*

Cindy asserts that the apportionment which divided the controlling interest in SBI should have been set aside under the Bank Holding Company Act of 1956, 12 U.S.C. §§ 1841-1852, and the regulations adopted thereunder which govern the transfer of a controlling interest in a bank holding company. More specifically, she argues that, pursuant to 12 C.F.R. 225.41(a), the parties are required to give the Federal Reserve Board sixty days written notice before acquiring control of a bank holding company unless the acquisition is exempt under 12 C.F.R. 225.42. Accordingly, the Code of Federal Regulations at Title Twelve (12), on "Banks and Banking," provides just such an exemption at 12 C.F.R. 225.42(b)(i) for the "[a]cquisition of voting securities through inheritance."

The trial court further articulated:

Given that this court has yet to render a judgment of possession on the allocated stock (presently pledged as loan security in the interim), there has been no "acquisition" to trigger the notice period. Thus, Cindy Cole's argument fails.

On appeal, Cindy responds by asserting that the 2008 partition was not binding or final *because* the parties have not been put in possession of the stock.

14

However, a binding partition can be effected between co-heirs without possession. La.Civ.Code art. 1320.[3]

In *McLain*, 486 So.2d 1044, the court found a consent judgment partitioning property binding, even though it was confected before the legal separation, divorce, and dissolution of community property, "where the judgment specifically provided that partition would be effective *after* legal separation or divorce, which subsequently occurred." *Id*. at 1046 (emphasis added).

Similarly, here, the partition judgment in 2008 directed the executor *to apportion* the stock at 3,020.5 shares each, subject to the loan agreement to which the stock was being pledged. Likewise, the current 2012 judgment under appeal confirmed the 2008 stock allocation and specifically stated that:

> [U]pon the termination of the administration of the Succession's affairs, the payment of all debts and . . . all accounts have been filed in accordance with law, that the Succession Representative is hereby authorized and directed to divide the Succession's interest in the common stock of Sabine Bancshares, Inc., in kind such that 3,020 ½ shares shall issue to each of Jim and Cindy.

Accordingly, we find, as the trial court found, that none of the grounds asserted by Cindy for setting aside the 2008 compromise and consent judgment has merit. We agree with the court's finding that the compromise was valid and enforceable.

---

[3]The Louisiana Civil Code, Book III, Title I, Chapter 12, Section 2, Among What Persons Partition Can Be Sued For, Article 1320 provides as follows:

Art. 1320. Ownership as basis for action of partition

It is not necessary, to support the action of partition, that the coheirs, or the party commencing it, should be in actual possession of the succession or of the thing to be divided; for among coheirs and coproprietors, it is not the possession but the ownership, which is the basis of the action.

### *Res Judicata*

The peremptory exception of res judicata is the proper mechanism to raise the defense that a suit is barred by a written compromise agreement. *In re Tutorship of Witt*, 99-646 (La.App. 3 Cir. 11/3/99), 747 So.2d 1142, *writ denied*, 99-3426 (La. 2/4/00), 754 So.2d 238. "While the doctrine of res judicata is ordinarily premised on a final judgment on the merits, it also applies where there is a transaction or settlement of a disputed or compromised matter that has been entered into by the parties. Thus, compromises have the legal efficacy of the thing adjudged." *Ortego v. State, Dep't of Transp. and Dev.*, 96-1322, p. 6 (La. 2/25/97), 689 So.2d 1358, 1363 (citations omitted).

Moreover, a consent judgment is a final judgment subject to res judicata if there is no appeal or request for a new trial within the delays allowed by law. *See Kepco Operating, Inc. v. Eubanks*, 10-1166 (La.App. 3 Cir. 3/9/11), 58 So.3d 1047, *writ denied*, 11-705 (La. 6/3/11), 63 So.3d 1017; *Weinstein v. Weinstein*, 10-1083 (La.App. 3 Cir. 4/13/11), 62 So.3d 878.

Based upon the foregoing, as to the first issue under review, we find no error by the trial court in finding a valid and enforceable compromise and consent judgment and in dismissing Cindy's claims regarding the partition of the stock pursuant to Jim's exception of res judicata.

### ISSUE (2): BREACH OF FIDUCIARY DUTY & PRESCRIPTION

Cindy asserts that the trial court erred in granting Jim's exception of prescription on Cindy's claims for breach of fiduciary duty. We disagree. When prescription is raised by peremptory exception, with evidence being introduced at the hearing on the exception, the trial court's findings of fact on the issue of prescription are subject to the manifest error-clearly wrong standard of review. *London Towne Condo. Homeowner's Ass'n v. London Towne Co.*, 06-0401 (La. 10/17/06), 939 So.2d

1227. Ordinarily, the exceptor bears the burden of proof at the trial of a peremptory exception of prescription; however, if prescription is evident on the face of the pleadings, the burden shifts to the plaintiff to show that the action has not prescribed. *SS v. State ex rel. Dep't of Soc. Servs.*, 02-831 (La. 12/4/02), 831 So.2d 926.

Here, the trial court applied La.Civ.Code art. 3492, which provides that delictual actions are subject to a liberative prescription of one year. The court found that Cindy's reconventional demand was filed in May 2011, "clearly more than one year" from the January 7, 2008 compromise and the January 23, 2008 consent judgment. Then, without discussing what conduct was claimed by Cindy as a breach of fiduciary duty entitling her to damages, the trial court found that any claim for damages by Cindy, "insofar as a breach of fiduciary duty sounds in tort, has prescribed."

The character a plaintiff gives her pleadings determines the prescription period applicable. When a plaintiff sues for the value of property wrongfully taken or detained, the action is regarded as one for damages based upon an offense or quasi offense, and the prescription of one year is applicable. *See Edward Levy Metals, Inc. v. New Orleans Public Belt R.R.*, 139 So.2d 80 (La.App. 4 Cir. 1962).

Cindy's reconventional demands of May 26, 2011, assert that Jim breached his fiduciary duty by causing, and then refusing to rescind, the apportionment in January 2008 because the apportionment diluted the controlling interest in SBI and diminished the fair market value of the stock. We find that, regarding Cindy's claims for breach of duty against Jim due to the partition, whether against Jim personally for detriment to her inheritance, *and/or* against Jim as executor

for detriment to the estate, those claims have been addressed substantively, and prescription is moot.[4]

Cindy's reconventional demands of May 26, 2011, also assert that Jim breached his fiduciary duty through several acts in January 2008 leading to the passage of the shareholder agreement and board member election. She alleges conflicts of interest and asserts that Jim combined his position as Chairman of the Board of SBI, *and* his position as executor of the succession owning 70% of SBI, to pass a shareholder agreement that impermissibly restricted her ability to sell her shares, including her pre-existing 1,406 shares, to anyone but Jim, and for any value except book value, thereby diminishing the value of her shares by 50%. She further asserts that Jim made a motion and voted to reduce the board seats resulting in her removal from SBI's board of directors. Cindy prays for damages for diminution of the value of the shares, attorney fees, and costs against Jim in his personal *and* representative capacity.

The record reveals that on January 16, 2008, Jim did vote the 7,041 estate shares to reduce the board membership, even though he had earlier, on January 7th, agreed to allocate 3,020.5 of those shares to Cindy. Cindy admits that La.R.S. 12:75(E)[5] authorizes Jim to vote the succession shares. We have found that the 2008 compromise and consent judgment, and the trial court's 2012 judgment confirming it, authorize Jim *to ultimately* divide the shares of stock, in kind, *upon the termination of the succession.* Therefore, the division has not taken place as yet; Jim is still the

---

[4]However, we make note of the fact that Cindy has asserted that both parties "unknowingly" diminished the value of the stock by partition, which is reflective of a claim based upon negligence with a one-year prescriptive period under La.Civ.Code art. 3492.

[5]Any person in whose name shares are registered in a fiduciary capacity, may, so far as concerns the corporation, vote the same in person or by proxy for all purposes, and without the necessity of any authorization by a court or of any judicial or other proceeding provided in particular laws.

La.R.S. 12:75(E).

executor of the succession, which is still under his administration.  Thus, La.R.S. 12:75(E) is still applicable.

Further, it was not Jim's conduct in voting the 3,020.5 shares slated for allocation to Cindy that caused the passage of the shareholder agreement or the elimination of the board seat.  Those items were passed by the votes of the other thirteen shareholders voting their 110 shares in SBI as well.  Hence, the result would have been the same if the 7,041 succession shares had not been voted.  Jim and Cindy voted opposite each other, so their pre-existing ownership of 1,406 shares, each, basically cancelled each other out.  It was the remaining thirteen shareholders, voting, either in person or by proxy, all of their 110 shares in favor of the shareholder agreement and the board seat elimination, who caused the passage of those items.  Not only is causation missing, but there is also an issue of actual damages since neither possession nor sale of the stock has yet occurred.

With regard to the conflict of interest, La.Code Civ.P. art. 3351.1[6] indicates that the shared role as officer of a corporation *and* executor of a succession owning the majority of the shares in the corporation results in limitations on the amount of the executor's compensation, but the shared role is not forbidden as a conflict of interest.

The executor's fiduciary duty is as follows:

---

[6] Unless expressly stated in the testament appointing the succession representative, *if the succession representative,* in discharging his duties as succession representative, *is or becomes an officer of a corporation, in which the majority of outstanding shares were owned by the decedent at the time of his death*, or is or becomes the managing partner of a partnership in which the decedent at the time of his death owned a majority interest, *the succession representative shall not receive compensation both as a succession representative and as an officer of the corporation,* or managing partner of the partnership; *however, the compensation of a succession representative shall be reduced by the amount of compensation which he received* and which was attributable to the performance of his duties *as an officer of the corporation* or managing partner of the partnership.

La.Code Civ.P. art. 3351.1(A) (emphasis added).

A succession representative is a fiduciary with respect to the succession, and shall have the duty of collecting, preserving, and managing the property of the succession in accordance with law. He shall act at all times as a prudent administrator, and shall be personally responsible for all damages resulting from his failure so to act.

La.Code Civ.P. art. 3191.

Cindy asserts that the trial court erred in not applying La.R.S. 9:5621, which provides for a two-year prescriptive period for actions against succession representatives. She correctly states that this prescriptive period does not begin to run until the day of the judgment homologating the final account, which has not occurred. Therefore, the action for breach of fiduciary duty under this article is premature. It is true that the trial court did not address this statute; however, neither can the claims urged thus far by Cindy, because the damages cannot yet have occurred.

## ISSUE (3): PARTIAL PAYMENT OF FEES BY THE ESTATE

Jim petitioned the court for approval for the succession to pay the McGlinchey Stafford law firm fees incurred by the firm while acting as counsel for the succession representative for the work of defending the 2008 judgment. The trial court granted in part, and denied in part, Jim's petition, assessing one half of the fees to Jim personally and one half of the fees to the succession. Jim does not appeal the judgment.

Cindy asserts that the trial court erred when it apportioned to the estate one half of the attorney fees because the legal representation at issue was primarily for the personal benefit of Jim. She argues that the succession did not incur fees until March 2011 when she asked Jim for modification of the 2008 judgment. Jim argues that the succession sustained fees defending the testator's intent and largely from Cindy's litigious flip-flopping of her position on the allocation of shares, voting rights, and other issues.

20

The payment of succession debts and expenses is authorized throughout the Louisiana Code of Civil Procedure, including articles 3301, et seq., and the Louisiana Civil Code, including articles 1421, et seq. See also, La.Code Civ.P. art. 3244. The trial court articulated as follows:

> [F]inding that Jim Cole and Cindy Cole entered into a compromise representing one hundred percent of all heirs to the residuary estate, no intent of the testator was at risk to require defending to the degree the succession claims. As discussed *supra*, as heirs, being *sui juris* and being the only persons having an interest in the residuary estate of their father, [they] opted to partition the shares without concern of the testator's intent or issue regarding the joint or separate legacy. Therefore, it is Jim and Cindy Cole litigating their personal interests in the compromise.
>
> 37. However, the 2008 Judgment also had Jim Cole appearing as succession representative as the compromise addressed how the estate taxes were to be paid. As the succession had an interest that the taxes be paid as agreed and defend its reliance upon the compromise to do so, this court finds that half of the subject fees of this motion be paid by the succession and the other half by Jim Cole, individually and as co-heir.

The trial court made reasonable factual findings, supported by the record, and we will not disturb those findings on appeal.

V.

## CONCLUSION

Based upon the foregoing, the judgment of the trial court is affirmed in all respects. The costs of this appeal are assessed against the appellant, Cynthia A. Cole.

**AFFIRMED.**