# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 19-275


SELENE CABRERA

VERSUS

JOSHUA JAMES LEWIS, JR., ET AL.


**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2017-5364
HONORABLE RONALD F. WARE, DISTRICT JUDGE

**********

## ELIZABETH A. PICKETT
## JUDGE

**********

Court composed of John D. Saunders, Elizabeth A. Pickett, and Van H. Kyzar, Judges.


**REVERSED AND REMANDED.**

**Aub A. Ward**
**Naquin & Ward**
**8034 Jefferson Highway**
**Baton Rouge, LA 70809**
**(225) 927-1907**
**COUNSEL FOR PLAINTIFF-APPELLANT:**
    **Selene Cabrera**

**Matthew J. Ungarino**
**Heather Cheesbro**
**Ungarino & Maldonado, LLC**
**3850 North Causeway Boulevard, Suite1280**
**Metairie, LA 70002**
**(504) 836-7537**
**COUNSEL FOR DEFENDANT-APPELLEE:**
    **Stonebridge Health Systems, LLC**

**PICKETT, Judge.**

Selene Cabrera appeals a judgment of the trial court granting the exceptions of prescription and prematurity filed by the defendant, Stonebridge Health Systems, LLC (Stonebridge).

## FACTS

Ms. Cabrera's original petition alleges that while she was a patient at Calcasieu Behavioral Health Services, LLC (CBHS) on December 29, 2016, an employee of the facility, Joshua James Lewis, Jr., sexually assaulted her. She filed a Petition for Damages on December 29, 2017, naming Mr. Lewis, CBHS, and an unknown insurer as defendants. The petition alleged an intentional tort by Mr. Lewis. The petition further alleged that Mr. Lewis was an employee of CBHS in the course and scope of his employment at the time of the assault, and therefore CBHS was responsible for the acts of its employee. The petition also alleged the negligence of CBHS in failing to properly supervise Mr. Lewis, failing to provide a safe living condition for Ms. Cabrera, failing to properly screen Mr. Lewis for criminal convictions and arrest, failure to warn Ms. Cabrera of Mr. Lewis's criminal history, and failure to provide proper monitoring equipment to alert other employees that a sexual assault was taking place in Ms. Cabrera's room.

Stonebridge made an appearance for the purpose of filing a Declinatory Exception of Improper Service, arguing that CBHS is unrelated to Stonebridge and service on Craig Johnson as agent of CBHS was insufficient to require any responsive pleading by Stonebridge. A hearing on the exception was scheduled for June 1, 2018, but was continued.

On June 14, 2018, Ms. Cabrera filed a First Supplemental and Amending Petition for Damages substituting Stonebridge Health Systems, LLC d/b/a Calcasieu Behavioral Health Services, LLC. This petition alleged the same

theories of recovery against Stonebridge as the original petition had alleged against CBHS. On July 6, 2018, Ms. Cabrera filed a Second Supplemental and Amending Petition for Damages. This amended petition substituted Stonebridge Health Systems, LLC for Stonebridge Health Systems, LLC d/b/a Calcasieu Behavioral Health Services, LLC. The allegations against Stonebridge were the exact same as those pleaded against CBHS in the original petition and against Stonebridge d/b/a CBHS in the first amended petition.

Stonebridge filed a Peremptory Exception of Prescription and Dilatory Exception of Prematurity and Memorandum in Support on July 26, 2018. Stonebridge argued that a one-year prescriptive period applies to Ms. Cabrera's tort action, and that she did not file a claim against Stonebridge until July 6, 2018, more than eighteen months after the alleged assault occurred. Thus, the claims against Stonebridge are prescribed on their face pursuant to La.Civ.Code art. 3492. Further, Stonebridge argued that it is completely unrelated to CBHS, and thus any claims against Stonebridge cannot relate back to the date of the filing of the original petition.

Stonebridge also argued that it is a qualified health care provider pursuant to the Louisiana Medical Malpractice Act (LMMA). Stonebridge argued that all the claims against it sound in medical malpractice. Pursuant to the LMMA, all medical malpractice claims against qualified health care providers must be submitted first to a medical review panel before filing suit in district court.

In response, Ms. Cabrera alleged that the amendment to the petition naming Stonebridge simply corrected the name of the defendant, and therefore relates back to the filing of the original petition. Thus, the claims against Stonebridge are not prescribed. Ms. Cabrera further argued that the claims against Stonebridge are intentional torts, namely intentional infliction of emotional distress and sexual

2

assault. These claims fall outside of the scope of the LMMA, and a medical review panel is not required before the filing of suit.

On September 26, 2018, Ms. Cabrera filed a motion to appoint a private process server to serve Mr. Lewis, as the sheriff of Calcasieu Parish had been unable to serve him at the address provided. The trial court signed an order appointing a private process server on October 3, 2018.

On October 1, 2018, the trial court held a hearing on the exceptions of prescription and prematurity. At the hearing, Stonebridge entered into the record the original petition, a copy of records from the Louisiana Secretary of State's office stating that Calcasieu Behavioral Health, LLC dissolved in 2009, a copy of Secretary of State records for Stonebridge, and a copy of the first and second supplemental petitions. In lieu of a certificate from the Patient's Compensation Fund verifying that Stonebridge is a qualified health care provider under the LMMA, the trial court accepted a stipulation that Stonebridge is a qualified health care provider. Stonebridge admitted that Ms. Cabrera was a patient at its facility on December 29, 2016, and that an employee of Stonebridge, a maintenance worker, snuck into Ms. Cabrera's room on that date where he allegedly committed a sexual assault upon her. Stonebridge argued that CBHS is not in anyway related to Stonebridge, and thus the amended petition filed in July should not relate back to the original petition. In response, Ms. Cabrera argued that Stonebridge was a successor corporation to CBHS ("he purchased the facility at some point, the details of which I do not know as we stand here"). Ms. Cabrera further argued that while Mr. Lewis had not yet been served with the petition at the time of the hearing, when he is served, Mr. Lewis and Stonebridge will be solidary obligors, and suit against Stonebridge would be timely. In response, Stonebridge pointed out the lack of any evidence presented by Ms. Cabrera to show that it was related

to CBHS, either as a successor corporation or in any other way. Further, even if Stonebridge was a successor corporation to CBHS, CBHS ceased its existence in 2009, and this claim arose in 2016, thus Ms. Cabrera has failed to show a significant relationship between CBHS and Stonebridge that would allow the court to find the amendment relates back to the original petition.

On the issue of prematurity, Stonebridge argued that all the claims against it in Ms. Cabrera's petitions sound in negligence, not intentional tort. Stonebridge further argues that each of the claims of negligence alleged by Ms. Cabrera in her original petition and both succeeding petitions are covered by the LMMA. Stonebridge further argued that the attack on Ms. Cabrera was outside the course and scope of its employee's employment, and therefore Stonebridge is not vicariously liable for his actions. Ms. Cabrera admitted that any negligence claims that fall under the LMMA may have been given up because they did not empanel a medical review panel. She argued, though, that Stonebridge bears the burden of proving that Mr. Lewis's actions, which constituted an intentional tort, fell outside the course and scope of his employment. If his actions were in the course and scope of his employment, Stonebridge would be liable under the theory of respondeat superior. Stonebridge pointed out in rebuttal that pursuant to La.Civ.Code art. 2324, unless you conspire with an intentional tortfeasor, you are not a solidary obligor for the damage caused by the intentional tort. Ms. Cabrera, they argue, submitted no evidence that Stonebridge conspired with Mr. Lewis.

The trial court took a recess to review Ms. Cabrera's opposition before returning to open court to issue a ruling on the record. The trial court granted both the exception of prescription and the exception of prematurity. A judgment in conformity with this ruling and dismissing all claims against Stonebridge was signed on November 8, 2018. Ms. Cabrera filed a Motion for Rehearing and/or

4

For New Trial, but that motion was dismissed on her own motion. Ms. Cabrera now appeals the judgment of the trial court.

## ASSIGNMENTS OF ERROR

On appeal, Ms. Cabrera asserts two assignments of error:

1. The trial court erred in granting the exception of prescription filed by Stonebridge Health Systems, LLC.

2. The trial court erred in granting the defendant's exception of prematurity as this matter is not controlled by the Medical Malpractice Act.

## DISCUSSION

We explained the burden of proof in a peremptory exception of prescription and the appellate standard of review of a trial court judgment granting an exception of prescription in *OMNI Energy Services Corp. v. Rhyne*, 14-322, pp. 6-7 (La.App. 3 Cir. 10/15/14), 149 So.3d 1282, 1288, *writ denied*, 15-1 (La. 3/27/15), 162 So.3d 387:

> The burden of proof on the peremptory exception of prescription lies with the party raising the exception. *Allain v. Tripple B Holding, LLC*, 13-673 (La.App. 3 Cir. 12/11/13), 128 So.3d 1278. However, if it is apparent from the face of the pleadings that the plaintiff's claims have prescribed, the burden shifts to the plaintiff to show otherwise. *Id.* Appellate courts review the peremptory exception of prescription pursuant to the manifest error standard of review if evidence, either supporting or contradicting, is presented at the hearing on the exception. *In re Succ. of Cole*, 12-802 (La.App. 3 Cir. 12/26/12), 108 So.3d 240. If no evidence is presented, appellate courts decide whether the finding of the trial court is legally correct or incorrect. *Id.*

The assault against Ms. Cabrera occurred on December 29, 2016. Ms. Cabrera's claims against Stonebridge were first raised in an amended petition dated June 14, 2018, though that petition indicated Stonebridge was doing business as CBHS. The prescriptive period for bringing a delictual action is one year. La.Civ.Code art. 3492. Thus, Ms. Cabrera's claim against Stonebridge is prescribed on the face of the pleadings, and she bears the burden of proving that this claim is still viable.

We find, though, that it is unnecessary to resolve this issue by determining whether the supplemental petitions relate back to the original petition.

If suit is filed against an obligor in a court of competent jurisdiction and venue, prescription is interrupted. La.Civ.Code art. 3462. "The interruption of prescription against one solidary obligor is effective against all solidary obligors and their heirs." La.Civ.Code art. 1799. Stonebridge pointed out that it cannot be a solidary obligor with an intentional tortfeasor unless there is evidence of conspiracy. La.Civ.Code art. 2324(A). Therefore, it argues, prescription is not interrupted against Stonebridge by the filing of the suit against Mr. Lewis. The remainder of Article 2324, though, states:

> B. If liability is not solidary pursuant to Paragraph A, then liability for damages caused by two or more persons shall be a joint and divisible obligation. A joint tortfeasor shall not be liable for more than his degree of fault and shall not be solidarily liable with any other person for damages attributable to the fault of such other person, including the person suffering injury, death, or loss, regardless of such other person's insolvency, ability to pay, degree of fault, immunity by statute or otherwise, including but not limited to immunity as provided in R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable.
>
> C. Interruption of prescription against one joint tortfeasor is effective against all joint tortfeasors.

According to the allegations of the petition, Stonebridge was liable for hiring Mr. Lewis and allowing conditions to exist whereby he had access to Ms. Cabrera's room where he could commit the sexual assault. While the trial court did take evidence regarding the issue of relation back of the petition, none of the evidence relates to the allegations made against either Mr. Lewis or Stonebridge. Looking only at the allegations of the petition and the admission at the hearing that Mr. Lewis was an employee of Stonebridge at the time of the alleged sexual assault, we find that Stonebridge is a joint tortfeasor for the purposes of La.Civ.Code art. 2324(B). Because we find prescription was interrupted as to Stonebridge when

6

suit was filed against its employee Mr. Lewis, the burden is not on Ms. Cabrera to prove that the amended petition naming Stonebridge relates back to the original petition. Thus, the judgment of the trial court sustaining the exception of prescription is reversed. We overrule the exception of prescription of prescription.

The trial court also ruled that this case is governed by the LMMA. As such, the trial court, relying on *Buford v. Williams*, 11-568 (La.App. 5 Cir. 2/14/12), 88 So.3d 540, *writ denied*, 12-624 (La. 4/27/12), 86 So.3d 630, found the claims made by Ms. Cabrera cannot be heard by the trial court until they have been submitted to a medical review panel. We disagree.

Medical malpractice is defined at La.R.S. 40:1231.1(A)(13):

> "Malpractice" means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from acts or omissions during the procurement of blood or blood components, in the training or supervision of health care providers, or from defects in blood, tissue, transplants, drugs, and medicines, or from defects in or failures of prosthetic devices implanted in or used on or in the person of a patient.

We find the holding in *Buford*, as applied to this case, is distinguishable. First, in *Buford*, the alleged perpetrator of the sexual assault was a healthcare provider. In this case, Mr. Lewis was a maintenance worker whose job was not to provide healthcare. Second, in *Buford*, River Oaks Hospital, the defendant healthcare provider, introduced evidence to explain the job duties performed by the alleged perpetrator, which included providing patient care. In this case, no evidence was submitted explaining how Mr. Lewis's job duties constituted "health care or professional services rendered." Likewise, the allegations against Stonebridge do not arise from the "training or supervision of health care providers."

7

We agree with the fifth circuit's holding that the claims against River Oaks based on the theory of *respondeat superior* were not subject to the LMMA:

> As pertinent to this issue, the Medical Malpractice Act limits its definition of "malpractice" to "any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient. . . ." La. R.S. 40:1299.41(13). The Medical Malpractice Act defines "tort" as "any breach of duty or any negligent act or omission proximately causing injury or damage to another." La. R.S. 40:1299.41(A)(22)[.]

> Rape is an intentional tort. An employer may have vicarious liability for intentional acts of an employee if the employee was acting within the course and scope of his employment. *LeBrane* [*v. Lewis,* 292 So.2d 216 (La.1974).] Determination of course and scope is made by analyzing the acts through the factors set out in *LeBrane v. Lewis, supra,* and its progeny.

> An employer's liability in *respondeat superior* shares the nature of the employee's act for which the employer is liable, because for vicarious liability, the employer is standing in the shoes of the employee. Therefore, because rape is an intentional act, any vicarious liability of River Oaks for rape is also classified as an intentional act. As such, River Oaks' vicarious liability is excluded from the Medical Malpractice Act.

*Buford*, 88 So.3d at 548 (footnotes omitted).

The judgment of the trial court sustaining the exception of prematurity is reversed. We overrule the exception of prematurity.

## CONCLUSION

The exceptions of prescription and prematurity are overruled. The judgment of the trial court dismissing all claims against Stonebridge is reversed. The case is remanded for further proceedings. All costs of this appeal are assessed against Stonebridge.

**REVERSED AND REMANDED.**