MILTON L. CROSBY, SR. AND
MICHAEL A. HINYUB

VERSUS

NELSON J. CANTRELLE, III AND
JON GEGENHEIMER, IN HIS OFFICIAL
CAPACITY AS CLERK OF COURT FOR
THE PARISH OF JEFFERSON, STATE OF
LOUISIANA

NO. 20-CA-252

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 808-806, DIVISION "C"
HONORABLE JUNE B. DARENSBURG, JUDGE PRESIDING

August 10, 2020

**ROBERT A. CHAISSON**
**JUDGE**

Panel composed of Judges Fredericka Homberg Wicker,
Robert A. Chaisson, and Hans J. Liljeberg

2020 AUG 10 AM 9: 37
DEPUTY CLERK
FIFTH CIRCUIT
COURT OF APPEAL
STATE OF LOUISIANA
FILE FOR RECORD

**AFFIRMED**

RAC
FHW
HJL

COUNSEL FOR PLAINTIFF/APPELLANT,
MILTON L. CROSBY, SR. AND MICHAEL A. HINYUB
    Davidson S. Ehle, III

COUNSEL FOR DEFENDANT/APPELLEE,
NELSON J. CANTRELLE, III
    Stephen M. Gele

**CHAISSON, J.**

In this election contest suit, Milton L. Crosby, Sr. and Michael A. Hinyub appeal the trial court's August 3, 2020 judgment denying their Petition Objecting to the Candidacy of Nelson J. Cantrelle, III, Candidate for Judge, Second Parish Court, Division A. For the following reasons, we affirm the decision of the trial court.

**FACTS AND PROCEDURAL HISTORY**

On July 22, 2020, Mr. Cantrelle qualified with the Jefferson Parish Clerk of Court to run for the position of Judge of Division A, Second Parish Court. In accordance with the manner of qualifying provisions contained in La. R.S. 18:461(A), Mr. Cantrelle paid his qualifying fee and filed with the Clerk a signed and notarized Notice of Candidacy form, which included the following certification required by La. R.S. 18:463(A)(2)(a)(iv):

> If I am a candidate for any office other than United States senator or representative in congress, that for each of the previous five tax years, I have filed my federal and state income tax returns, have filed for an extension of time for filing either my federal or state income tax return or both, or was not required to file either a federal or state income tax return or both.

On July 30, 2020, Mr. Crosby and Mr. Hinyub, both registered voters in the Parish of Jefferson, filed a Verified Petition Objecting to the Candidacy of Mr. Cantrelle. In their petition, plaintiffs alleged that pursuant to a public records request, the Louisiana Department of Revenue ("LDR") responded by letter that Mr. Cantrelle has not filed the required state tax forms for the years 2017 and 2018. They further alleged that upon information and belief, Mr. Cantrelle was required to file the state tax forms for the last five years. They alleged, therefore, that Mr. Cantrelle's certification contained in his Notice of Candidacy is false.

Accordingly, plaintiffs alleged that Mr. Cantrelle is disqualified to run for judge because he both failed to file his state tax returns for 2017 and 2018 *and*

falsely certified on his notice of candidacy that he had filed those returns.[1]

Plaintiffs further alleged that Mr. Cantrelle is therefore not qualified to run in the primary election because he has not qualified in the manner prescribed by law, pursuant to La. R.S. 18:492(A)(1), and because he does not meet the qualifications for the office he seeks in the primary election, pursuant to La. R.S. 18:492(A)(3).[2]

At the trial of this matter, held on August 3, 2020, plaintiffs called Vanessa LaFleur, Director of Policy Services and a custodian of records at the LDR, to testify regarding the public records request and search for Mr. Cantrelle's tax filings. Ms. LaFleur testified that four different public records requests concerning Mr. Cantrelle's state tax returns were received in July of 2020, that a records search was conducted on July 29, 2020, resulting in a July 30, 2020 letter confirming that the Department could confirm tax filings by Mr. Cantrelle for tax years 2015, 2016, and 2019, but could not confirm filings for tax years 2017 and 2018.[3]

In response to these allegations, Mr. Cantrelle asserted that his 2017 and 2018 tax returns were filed on July 21, 2020, via certified mail, and thus his certifications on his Notice of Candidacy form signed on July 22, 2020, were true and correct. Specifically, Mr. Cantrelle testified that on July 20, 2020, he and his wife, Chelsea Cantrelle, picked up his 2017 and 2018 state tax returns from his accountant, Mr. Robert Logreco, and that Mrs. Cantrelle mailed them on the

---

[1] We note that the precise language of La. R.S. 18:492, which provides the exclusive grounds for objecting to candidacy, as it relates to the filing of tax returns, does not provide disqualification for the actual failure to file the required tax returns, but rather provides for disqualification for the false certification in the Notice of Candidacy that the required tax returns have been filed. This choice of language by the Legislature has created, as will be discussed *infra*, an evidentiary challenge to parties to disqualification lawsuits on these grounds.

[2] Although plaintiffs cite to the "failure to qualify in the manner prescribed by law" and the "failure to meet the qualifications of office" grounds for disqualification, there is no contention that Mr. Cantrelle did not timely file his Notice of Candidacy and pay his qualifying fee to the Clerk of Court pursuant to La. R.S. 18:461, or that Mr. Cantrelle does not meet the qualifications for judicial candidates set forth in La. Const. art. V, 24(A), namely that he has been domiciled in the district for one year prior to qualifying for the election and that he has been admitted to the practice of law for eight years preceding the November 3, 2020 election. Apparently these alleged grounds of disqualification relate solely to the issue of the filing of Mr. Cantrelle's state tax returns and his certification in his Notice of Candidacy regarding those returns.

[3] A copy of the LDR's July 30, 2020 letter was introduced into evidence by plaintiffs.

afternoon of July 21, 2020, to the LDR. Mr. Cantrelle testified that at the moment he qualified to run for judge on July 22, 2020, he "absolutely believed" that his 2017 and 2018 state tax returns had been mailed to the LDR the previous day and that nothing has occurred since that day to change that belief. Lastly, Mr. Cantrelle testified that, based upon these occurrences, he filed his 2017 and 2018 Louisiana state tax returns before he signed the qualifying affidavit.

Mr. Robert Logreco testified that he is a Certified Public Accountant and that he prepared Mr. Cantrelle's 2017 and 2018 Louisiana state tax returns prior to July 20, 2020. He further testified that Mr. Cantrelle and his wife picked up the returns on July 20, 2020.[4]

Mrs. Cantrelle testified that she was with her husband at Mr. Logreco's office on July 20, 2020, when he picked up the 2017 and 2018 tax returns. She further testified that she printed mailing labels and prepared registered return receipt tags, placed the returns in separate envelopes, and took those envelopes to the United States Postal Office in Harvey, Louisiana, where she mailed them via registered return receipt to the LDR. Mrs. Cantrelle confirmed that the documents contained within the envelopes that she mailed were in fact Mr. Cantrelle's 2017 and 2018 Louisiana state tax returns.[5] Lastly, Mrs. Cantrelle testified that she followed the progress of the envelopes by entering the tracking numbers on the receipts into the USPS online web-based tracking system, which showed that the envelopes were "delivered" on July 27, 2020, at 7:04 a.m.[6] The plaintiffs did not call any additional witnesses in rebuttal to Mr. Cantrelle's evidence.

---

[4] Redacted copies of these two tax returns, showing Mr. Logreco's signature and the date of July 20, 2020, were introduced into evidence by Mr. Cantrelle.

[5] Copies of both of the U.S. Postal Service's Certified Mail Receipts, showing that these envelopes were mailed via certified mail on July 21, 2020, to the LDR at P.O. Box 3440 in Baton Rouge, Louisiana, were introduced into evidence by Mr. Cantrelle.

[6] Printed copies of the tracking information appearing on the USPS online web-based tracking system for both of these certified receipts were introduced into evidence by Mr. Cantrelle. Despite the fact that the purported delivery date was eight days prior to the trial of this matter, and that Ms. LaFleur was appearing at trial from her office via Zoom and presumably had access to the LDR database, neither Mr. Cantrelle nor plaintiffs asked Ms. LaFleur to either confirm or controvert this evidence of delivery to the LDR.

At the conclusion of the trial, the trial court found the Mr. Cantrelle properly qualified for the election and accordingly rendered judgment that plaintiffs' petition is denied. On appeal, plaintiffs argue that the trial court erred in denying their petition because defendants failed to present evidence rebutting the testimony of Ms. LaFleur that the 2017 and 2018 tax returns had not been filed and because the trial court legally erred in its application of Louisiana Administrative Code Title 61, Part 1, §4911.

**DISCUSSION**

Appellate courts review a trial court's findings of fact under the manifest error or clearly wrong standard of review. *Smith v. Charbonnet*, 17-0634 (La. App. 4 Cir. 8/2/17), 224 So.3d 1055, 1059, *writ denied*, 17-1364 (La. 8/7/17), 222 So.3d 722. Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. *Salgado v. Tri-Par. Roofing & Home Improvements*, 19-407 (La. App. 5 Cir. 5/27/20), -- So.3d --. Appellate review of questions of law is simply a review of whether the trial court was legally correct or incorrect. *Buford v. Williams*, 11-568 (La. App. 5 Cir. 2/14/12), 88 So.3d 540, 545, *writ denied*, 12-264 (La. 4/27/12), 86 So.3d 630. If a decision is based on a trial court's erroneous interpretation of the law, rather than an exercise of its discretion, it is not entitled to deference. *North v. Doucet*, 18-437 (La. App. 5 Cir. 8/1/18), 253 So.3d 815, 818, *writ denied*, 18-1294 (La. 8/3/18), 249 So.3d 829.

In an election contest, because election laws must be interpreted to give the electorate the widest possible choice of candidates, a person objecting to the candidacy bears the burden of proving the candidate should be disqualified. *Landiak v. Richmond*, 05-758 (La. 3/24/05), 899 So.2d 535, 541. Although Louisiana law favors candidacy, once a plaintiff makes a *prima facie* showing of

grounds for disqualification, the burden shifts to the defendant to rebut the showing. *Russo v. Burns*, 14-1963 (La. 9/24/14), 147 So.3d 1111, 1114.

La. R.S. 18:492(A) states:

> An action objecting to the candidacy of a person who qualified as a candidate in a primary election shall be based on one or more of the following grounds:

> (7) The defendant falsely certified on his notice of candidacy that for each of the previous five tax years he has filed his federal and state income tax returns, has filed for an extension of time for filing either his federal or state income tax return or both as provided in R.S. 18:463(A)(2), or was not required to file either a federal or state income tax return or both.[7]

Because the ground for disqualification as it pertains to tax returns is the falsity of the candidate's certification in his Notice of Candidacy, and because the Louisiana Administrative Code's "postmark" rule allows for a retroactive "filing" date for tax returns, courts in our state have been faced with election challenge suits, like the one before us, where a challenged candidate has filed his Notice of Candidacy with a certification that he has filed his required tax returns, *after* he has belatedly attempted to file past due tax returns by mailing them, but *before* actual physical receipt of those returns by the LDR. In these cases, courts are faced with examining the factual circumstances surrounding the mailing of the returns in order to determine whether the candidate's certification of the "filing" of those returns is truthful.

In conducting our review of this matter, before we examine the evidence that was before the trial court regarding the factual circumstances surrounding the mailing of Mr. Cantrelle's returns, we must first dispose of plaintiffs' argument that in determining the date of filing of Mr. Cantrelle's tax returns, he cannot rely

---

[7] We note that with the addition of this mandatory, affirmative certification regarding tax returns in the Notice of Candidacy, under penalty of disqualification for a false certification, the Legislature has effectively, by statute, expanded the qualifications necessary to run for office beyond those required by our State constitution, apparently on the questionable premise that it is merely a procedural requirement for qualifying. However, because neither party has raised this issue, nor briefed it, we decline to discuss it further in this opinion.

upon the Louisiana regulation's "postmark" rule because his 2017 and 2018 state tax returns were already past due at the time that his wife mailed them.[8] In this regard, plaintiffs further argue that if Mr. Cantrelle cannot rely upon the "postmark" rule, then his returns were not "filed" with the LDR at the time of his Notice of Candidacy certification and therefore that certification is necessarily false.

Louisiana Administrative Code Title 61, Part 1, § 4911 states:

1. Delivery by the United States Postal Service. A return, report or other document in a properly addressed envelope with sufficient postage delivered by the United States Postal Service is deemed filed on the date postmarked by the United States Postal Service. The postmark must bear a date on or before the last date prescribed for filing the return, report or other document in order to be considered timely filed. If the postmark on the envelope is not legible, the taxpayer has the burden of proving the date that the postmark was made. If the return, report or other document is sent by United States registered or certified mail, the date of registration is treated as the date of postmark. A postage meter date is considered a valid postmark date provided it does not conflict with a legible United States Postal Service postmark date. If the dates conflict, the United States Postal Service date shall override the meter date.

When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written. La. C.C. art. 9. We agree with the Louisiana Supreme Court's conclusion in *Russo* that the language of Louisiana Administrative Code Title 61, Part 1, §4911 is unambiguous. *Russo*, 147 So.3d at 1114.

The first sentence of §4911 states that "a return, report or other document in a properly addressed envelope with sufficient postage delivered by the United States Postal Service is deemed filed on the date postmarked by the United States Postal Service." Plaintiffs contend, with no apparent supporting legal authority,

---

[8] Plaintiffs reason that, since the prescribed filing dates for the 2017 and 2018 tax returns were May 15, 2018 and May 15, 2019, respectively, and Mr. Cantrelle acknowledges that the returns were not mailed by Mrs. Cantrelle until July 21, 2020, Mr. Cantrelle's tax returns were untimely, and he may not rely on the other provisions of §4911 concerning the date of postmark as the date of filing.

that the second sentence of the regulation, stating that "[t]he postmark must bear a date on or before the last date prescribed for filing the return, report or other document *in order to be considered timely filed*" (emphasis added), requires that a return be mailed by its prescribed due date in order for the "postmark" rule to control the date of filing. Essentially, plaintiffs argue that the second sentence negates the first sentence of the regulation for returns that are already untimely when mailed. We disagree with plaintiffs' interpretation of §4911.

Pursuant to the clear and unambiguous language of this regulation, a return that is untimely when it is mailed remains *untimely* for tax purposes regardless of the "postmark" rule; however, under the unambiguous language of the first sentence, the date of the postmark is still considered the date of filing of that return.[9] Therefore, we conclude that the "postmark" rule remains applicable to a return that is mailed after the last date prescribed for its filing, and the trial court did not err as a matter of law in its interpretation of §4911, finding the "postmark" rule applicable. Mr. Cantrelle was entitled to rely on the "postmark" rule, provided that the circumstances surrounding the mailing of his returns is sufficient to justify that reliance. We now address that issue.

The trial court, citing §4911, found that because the returns were sent by certified mail in a properly addressed envelope with sufficient postage, Mr. Cantrelle's 2017 and 2018 state tax returns were filed on July 21, 2020, the date of the postmark, and therefore Mr. Cantrelle did not make a false certification on his Notice of Candidacy.[10]

---

[9] Contrary to plaintiffs' arguments, whether Mr. Cantrelle's 2017 and 2018 state tax returns were timely filed *for tax purposes* is irrelevant to our analysis, as La. R.S. 18:463(A)(2)(a)(iv) does not require a candidate to certify that he has filed *timely* tax returns, only that he has *filed* tax returns for the previous five years. Indeed, if La. R.S. 18:463(A)(2)(a)(iv) required Mr. Cantrelle to certify that he had filed *timely* federal and state tax returns for the previous five years, then as of May 16, 2018, the date after which Mr. Cantrelle's 2017 state tax return could no longer be *timely* filed, unless he obtained a timely extension for filing that return, he would be disqualified from running for elective office in Louisiana for the next five years from that date, regardless of any subsequent measures he took regarding the filing of his 2017 state tax return.

[10] Two dates appear on the certificates: "July 21, 2019," which appears to be a postmark date, and "July 21, 2020," which appears to be a date of registration. There is no explanation for this discrepancy,

In its decision, the trial court relied on the Supreme Court's ruling in *Russo v. Burns*, 14-1963 (La. 9/24/14), 147 So.3d 1111. That case also involved an election challenge on the ground that the candidate, Mr. Burns, had purportedly falsely certified on his August 20, 2014 Notice of Candidacy that he had filed his tax returns for the years 2010, 2011, 2012, and 2013. At trial, the plaintiff, Mr. Russo, introduced correspondence to and from the LDR wherein the LDR stated it had no tax returns on file for Mr. Burns for the years 2010 through 2013. A representative for the LDR also testified at trial that she was unable to locate any tax returns filed by Mr. Burns since 2009. Mr. Burns testified that he hired a tax preparer to file his tax returns for him in early August of 2014. The tax preparer testified that the returns were mailed, but not sent via certified mail. A United States Postal Service "Certificate of Mailing" dated August 15, 2014, was admitted into evidence, and the tax preparer testified that she kept the certificate to document the tax returns had been mailed. Mr. Russo then presented rebuttal testimony from another individual who provided other certificates of mailing from that same post office which showed postage paid affixed to the certificates unlike the ones placed into evidence by Mr. Burns. The trial court found that Mr. Burns had presented sufficient evidence to rebut the *prima facie* case established by Mr. Russo. The Fourth Circuit Court of Appeal affirmed the trial court's judgment. The Louisiana Supreme Court reversed this decision, citing the "unambiguous language regarding filing provided by the LDR's regulations," in particular Louisiana Administrative Code Title 61, Part 1, §4911. In reaching its conclusion to disqualify Mr. Burns, the Supreme Court stated, "Without sending the returns *via certified mail* or otherwise ensuring their **delivery** to LDR, [the candidate]

---

although the 2019 date appears to be in error since the first entry in the tracking information indicates that the items were in possession of the USPS in Harvey on July 21, 2020. Regardless, §4911 provides that "if the return, report or other document is sent by United States registered or certified mail, the date of registration is treated as the date of postmark." Furthermore, because both dates are before the July 22, 2020 Notice of Candidacy, this discrepancy is immaterial to our analysis.

could not have known whether or not his tax returns had been **filed** pursuant to Louisiana regulation when he signed his Notice of Candidacy." *Id*. at 1114 (emphasis in original; italics added).

The case before us is factually distinguishable from *Russo*. Like Mr. Russo, plaintiffs here provided evidence of correspondence from the LDR showing that, as of July 30, 2020, tax returns for Mr. Cantrelle could not be found in the LDR's system. Also, a representative from the LDR testified that the tax returns were not found.[11] This evidence is sufficient to establish plaintiffs' *prima facie* case.

The evidence presented by Mr. Cantrelle to rebut plaintiffs' *prima facie* case is more substantial than the evidence in *Russo*. Mrs. Cantrelle testified that she placed the tax returns in the envelopes, drove them to the post office, and mailed them to the LDR in Baton Rouge via certified mail. Copies of both of the U.S. Postal Service's Certified Mail Receipts were introduced into evidence. These receipts show the amount of postage paid as well as a July 21, 2020 registration date.[12]

Having found that Mr. Cantrelle was entitled to rely upon the "postmark" rule, we conclude that this evidence alone was sufficient to prove that his 2017 and 2018 state tax returns were filed as of July 21, 2020, the date that they were mailed by certified mail. Having mailed his returns by certified mail, Mr. Cantrelle could have reasonably known and believed that his returns would be delivered to the LDR and would be considered filed as of July 21, 2020. *See Russo*, 147 So.3d at 1114 ("*without sending the returns via certified mail* or otherwise ensuring their **delivery** to LDR, Burns *could not have known* whether or not his tax returns had been **filed** pursuant to Louisiana regulation when he signed his Notice of

---

[11] The opinion in the *Russo* case indicates that the LDR representative performed a search of the LDR's records at the trial of the matter. 147 So.3d at 1113. In the matter before us, neither party requested that Ms. LaFleur perform such a search during the trial.

[12] §4911 provides that "if the return, report or other document is sent by United States registered or certified mail, the date of registration is treated as the date of postmark."

Candidacy" [emphasis in original; italics added], certainly implying that Mr. Burns could have reasonably known of delivery if he had sent his returns by certified mail). We find that the trial court was not manifestly erroneous in determining that Mr. Cantrelle's returns were filed as of July 21, 2020, and that his certification in his Notice of Candidacy on July 22, 2020, was not false.

Plaintiffs appear to argue in their appellate brief that the reasoning of the Louisiana Supreme Court in *Russo*, requires a challenged candidate who seeks to rely upon the "postmark" rule to definitively prove actual delivery of returns mailed by certified mail to the LDR in order to rely upon the "postmark" rule to establish the filing date. Specifically, they cite to language from *Russo*, that "returns which have not been **delivered** to LDR by the United States Postal Service have not been **filed** pursuant to this clear language [of §4911]." *Russo*, 147 So.3d at 1114 (emphasis in original). While we recognize that ultimate delivery of the tax return mailed by certified mail is required for application of the "postmark" rule for tax purposes, we disagree with plaintiffs' assertion that the challenged candidate must definitively prove actual delivery of returns mailed by certified mail to the LDR for the purpose of showing that his certification in his Notice of Candidacy was not false. We reach this conclusion for the following reasons.

The Supreme Court in *Russo* disqualified Mr. Burns on the ground that he falsely certified that he had filed his tax returns, not on the ground that he did not file his tax returns (which is not a ground for disqualification pursuant to La. R.S. 18:492). Therefore, while events occurring subsequent to the date of Mr. Burns' certification (such as later actual delivery of the tax returns or no such evidence of delivery), may serve to confirm or refute the certification of filing, those subsequent events do not change the knowledge that Mr. Burns possessed on the

date of his certification. Consequently, it is Mr. Burns' knowledge of events prior to and up until the time of his certification that is relevant to the analysis.

Mr. Burns, who was attempting to rely upon the "postmark" rule, produced no evidence of subsequent actual delivery of his returns to the LDR. If the Supreme Court required such proof, it would have ended its analysis by indicating that Mr. Burns failed to prove actual delivery to the LDR. Instead, the Supreme Court stated that "*without sending the returns via certified mail* or otherwise ensuring their **delivery** to LDR, Burns *could not have known* whether or not his tax returns had been **filed** pursuant to Louisiana regulation when he signed his Notice of Candidacy." *Id.* (emphasis in original; italics added). Clearly, the Supreme Court, in disqualifying Mr. Burns for making a false certification, considered what Mr. Burns could have known, or "could not have known," at the time he made his certification, based upon the circumstances surrounding the mailing (*e.g.*, whether the returns were mailed by certified mail).

Our interpretation of the Supreme Court's ruling in *Russo* is that the challenged candidate is not required to prove actual delivery to the LDR, but that the challenged candidate must show reliable circumstances of mailing (*e.g.*, by certified mail), that would tend to ensure delivery, in order to maintain a reasonable belief that his returns have been filed as of the date of his certification to that effect in his Notice of Candidacy. Accordingly, for purposes of an election challenge, although proof of subsequent actual delivery of the return to the LDR definitely would have evidentiary value to either corroborate or refute the truth of the candidate's certification, it is not essential to, and its unavailability at the time of trial is not dispositive of, the question of whether the candidate's prior certification was truthful.

In other words, once a plaintiff makes a *prima facie* case for disqualification and the burden of proof shifts to the challenged candidate, the challenged candidate

cannot carry his burden by simply professing a purely subjective, self-serving and unsupported "belief" that his returns have been filed. To the contrary, the challenged candidate must produce objective supporting evidence regarding the circumstances of mailing (*e.g.*, proof of mailing by certified mail) to render his belief regarding filing a *reasonable* belief. In this case, Mr. Cantrelle clearly provided such objective evidence supporting his belief regarding the filing of his state tax returns.

Regardless of our interpretation of the Supreme Court's reasoning in *Russo*, to the extent that proof of actual delivery of the returns to the LDR is required in order to rely upon the "postmark" rule for purposes of this election challenge, we find that Mr. Cantrelle provided sufficient proof of that delivery.

Mrs. Cantrelle testified that she followed the progress of the envelopes by entering the tracking numbers on the receipts into the USPS online web-based tracking system. Printed copies of the tracking information appearing on the USPS online web-based tracking system for both of these certified receipts were introduced into evidence by Mr. Cantrelle. Those copies show that the envelopes were in the possession of the USPS in Harvey on July 21, 2020, and were "delivered" on July 27, 2020, at 7:04 a.m.

In our opinion, this evidence of delivery is also sufficient to rebut plaintiffs' *prima facie* case and shift the evidentiary burden back to plaintiffs to prove that the returns were not delivered and that Mr. Cantrelle falsely certified his Notice of Candidacy.[13] In response to this evidence, plaintiffs failed to produce any contrary

---

[13] Although plaintiffs complain that Mr. Cantrelle did not ask Ms. LaFleur at the time of trial to confirm this delivery, we note that plaintiffs had the opportunity to ask Ms. LaFleur at the time of trial to refute this delivery, but chose not to ask. We further note that Mr. Cantrelle has filed a motion with this Court requesting supplementation of the record with additional attached documentation, obtained after the trial of this matter, regarding delivery of his state tax returns. In light of this opinion, we deny Mr. Cantrelle's request for supplementation of the record and decline his alternative request for remand to the trial court for the taking of this additional evidence.

evidence and therefore failed in their burden of proof. We find no manifest error in the trial court's factual findings to this effect.

Plaintiffs also alleged that Mr. Cantrelle is disqualified to run for judge because he has not qualified in the manner prescribed by law, pursuant to La. R.S. 18:492(A)(1), and because he does not meet the qualifications for the office he seeks in the primary election, pursuant to La. R.S. 18:492(A)(3). However, because these alleged grounds of disqualification relate solely to the issue of the filing of Mr. Cantrelle's state tax returns and his certification in his Notice of Candidacy regarding those returns, and having found that Mr. Cantrelle's certification in his Notice of Candidacy regarding those returns was not false, we pretermit any further discussion of disqualification pursuant to La. R.S. 18:492(A)(1) or La. R.S. 18:492(A)(3).

**CONCLUSION**

Having found no legal or manifest error in the trial court's judgment denying plaintiffs' petition challenging the qualifications of Mr. Cantrelle, we hereby affirm the judgment of the trial court.

**AFFIRMED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**AUGUST 10, 2020** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 20-CA-252

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE JUNE B. DARENSBURG (DISTRICT JUDGE)
DAVIDSON S. EHLE, III (APPELLANT)      STEPHEN M. GELE (APPELLEE)      CAREY B. DASTE (APPELLEE)

**MAILED**
RANDALL A. SMITH (APPELLEE)
ATTORNEY AT LAW
201 ST. CHARLES AVENUE
SUITE 3702
NEW ORLEANS, LA 70170